420 So.2d 737 (1982)
Althea Jones ROBINSON
v.
F.W. WOOLWORTH & CO.
No. 12895.
Court of Appeal of Louisiana, Fourth Circuit.
September 30, 1982.
*738 Owen J. Bradley and Michael R. Guidry, Sherman F. Raphael, New Orleans, for plaintiff and appellee.
Law Offices of James J. Morse, Carl L. Aspelund, New Orleans, for defendant and appellant.
Before REDMANN, AUGUSTINE and LOBRANO, JJ.
AUGUSTINE, Judge.
On February 19, 1981, a unanimous jury awarded Althea Jones Robinson $75,000.00 for injuries suffered in a slip-and-fall accident at a store owned by F.W. Woolworth & Co., the defendant. Woolworth now appeals that judgment, citing seven assignments of error in the proceedings below. We affirm.

FACTS
Just before noon on August 16, 1979, Althea Robinson went to the Woolco Store located 5601 Chef Menteur Highway, accompanied *739 by two young nephews, Keely Robinson and Dwayne Allen. Their primary purpose for shopping that day was to purchase a baby bedMrs. Robinson was eight months pregnant.
About twenty minutes after arrival at the store, as Mrs. Robinson pushed her shopping cart through the aisles of the paint department, scanning the shelves for various items, she failed to notice a puddle of transparent liquid in her path. Mrs. Robinson stepped in the pool and slipped, falling to the floor in the puddle of spilled fluid. Almost immediately, the plaintiff experienced an intense burning sensation in her buttocks. She did not yet know what had happened to her, and, in her confusion, thought that she might be bleeding internally.
Mrs. Robinson's screams attracted the attention of several other shoppers, store personnel, and her two nephews. It was then that she became aware that the liquid which she had fallen into was the spillage of a can of KUTZIT paint remover. Several shoppers gathered in a circle around Mrs. Robinson and removed her dress, which was soaked with the burning solvent. One of them called an ambulance, but it did not come until about a half-hour later. As they waited for help to arrive, one gentleman, wanting to be of assistance, wrote his name, address, and telephone number on a scrap of paper and handed it to Keely, one of the plaintiff's nephews. The man was to testify later in Mrs. Robinson's behalf, the only independent eye-witness to the accident.
Mrs. Robinson was finally driven to Southern Baptist Hospital in an emergency unit. She remained in great pain on the way. As medics attempted to remove her undergarments, they realized that they were stripping away her skin along with her clothes, so efficient was the chemical reaction.
Upon arrival at the hospital's emergency room, the plaintiff was first treated by Dr. Al Pavy, who diagnosed her injuries as acute lumbosacral strain, accompanied by first and second degree burns of the buttocks. She was later treated by Dr. Courtney Russo, an orthopedist, who reviewed and affirmed Dr. Pavy's diagnosis. Mrs. Robinson was admitted to the hospital, where she remained for two weeks. Further examination by Dr. Russo revealed the possibility of neurological damage, as it was discovered that the plaintiff was having difficulty perceiving sensation in her left foot. And consistent with the earlier diagnosis of lumbosacral strain, the doctor noted spasms in the patient's lower back.
One week after admission to Southern Baptist, plaintiff gave birth to her third child. Although the birth was without medical complications, Mrs. Robinson was unable to receive any pain medication during the week prior to delivery except for tylenol. During that time, plaintiff testified, she was very anxious and distraught over the possibility that her fall might have caused grievous injury to the baby. The plaintiff also testified that she was in excruciating pain because of the burns.
Mrs. Robinson was released from the hospital a week after giving birth. After her return home, she continued to suffer loss of mobility in her lower back, rendering most physical activity, particularly bending, extremely painful. Moreover, plaintiff's second-degree burns did not allow any sitting, as the buttocks area was still quite raw. As a result of these injuries, it was impossible for the plaintiff to take care of herself or her own babyshe was fortunate to have several relatives who gave assistance. Not until a month after her return from the hospital did plaintiff's condition improve to the point that she could ride in an automobile for a visit to Dr. Russo's office. Treatment for the back injury began again, but with little progress. Examinations performed by Dr. Russo in September, 1979 showed that the plaintiff was able to flex only 70 degrees in the straight leg raising test, and could bend forward only 60-70 degrees. The normal range of motion in each of these exercises is 80-90 degrees. By September 1980, more than a year after the fall, plaintiff's range of motion still had not improved, and in fact it may be said that her condition had deteriorated *740 in that she developed a pelvic tilt and scoliosis, or curvature of the spine. In January 1981, plaintiff was informed by Dr. Russo that she probably would continue to have problems with her back. As of trial on February 19, 1981, Mrs. Robinson's lower back still had not returned to normal.

LIABILITY
The duty of a store owner to protect customers from foreign substances is one of reasonable care under the circumstances. Reasonable protective measures, including periodic inspections, must be taken to keep the aisles and floors free of substances or objects that may cause customers to fall. Gonzalez v. Winn-Dixie, Louisiana, Inc. 326 So.2d 486 (La.1976). The reasonableness of protective measures varies with the circumstancesthe type and volume of merchandise, the volume of business, the floor space used for customer service.
Once a customer proves that a foreign substance on the floor caused him to fall and be injured, the presumption arises that the fall was caused by the store owners' negligence. Gonzalez, supra; Kavlich v. Kramer, 315 So.2d 282 (La.1975).
In those cases where it appears that a third person is responsible for spilling the foreign substance, a store owner may rebut the presumption of negligence by proving that store employees made periodic inspections and took reasonable precautions to make aisles and floor space reasonably safe for customers. Gonzalez, supra.
Appellant argues that the presumption of negligence has been effectively rebutted by proof that periodic inspections were made. Additionally, he relies upon Maryland v. Winn-Dixie, Louisiana, Inc., 393 So.2d 316 (La.App. 1st Cir. 1981) for the proposition that a store owner must be relieved of liability arising from a slip-and-fall if it is proved that the foreign substance was allowed to remain on the floor for only a brief time.
Upon review of the evidence, we find that Woolco has not adequately rebutted the presumption of its negligence. First, we note the testimony of an independent eye-witness to the fall, Mr. Edmond Rollins, who stated that he had been shopping in the store at the time of Mrs. Robinson's fall, and had noticed the transparent fluid on the floor a full fifteen minutes before the plaintiff slipped in it.
The defense presented Mr. Jerry Mills to dispute Mr. Rollins' testimony. Mills, a Woolco employee, testified that he was in the area where Mrs. Robinson fell only two or three minutes prior to the accident, and saw nothing on the floor. Mills, however, admitted that his immediate concern at that time was to wait on customers.
The jury also heard the testimony of Mr. George Burns, another Woolco employee, who stated that within two to five minutes prior to Mrs. Robinson's fall, he had been in the areaabout five feet from the place where the plaintiff felland did not notice any liquid on the floor. At that time, Mr. Burns' attention was occupied by the task of stocking the shelves.
Absent a showing of manifest error, we will accept the jury's factual findings. Canter v. Koehring Co., 283 So.2d 716 (La. 1973); Arceneaux v. Domingue, 365 So.2d 1330 (La.1979). In the face of Mr. Rollins' testimony, it is not unreasonable to conclude that the spill simply escaped the notice of both Mr. Mills and Mr. Burns, whose attention at that time focused upon other matters. We find no manifest error in the jury's accepting the testimony of Mr. Rollins (who sought to prove a positivethe existence of the spill) over that of Mr. Mills and Mr. Burns (who sought to prove a negative). We therefore accept it as proven by a preponderance that the paint remover was on the floor for at least fifteen minutes prior to plaintiff's fall.
We do not regard that length of time to be so brief as to exculpate Woolco under the rule of Maryland v. Winn-Dixie, supra. In reaching this conclusion, we note that by Mills' and Burns' own admission, they were in the area of the plaintiff's fall only minutes before it occurred. The *741 spilled KUTZIT was indeed noticeable, for it had been observed by Rollins to be approximately two feet wide. Had the store's employees been as observant as he, they too would have seen the solvent on the floor and taken the proper precautions. We note also that although Woolco employed a porter whose duty it was to keep the floors clean at all times, the store's procedure required him to make only one inspection during the morning hours. We do not think that Woolco should escape liability on the merits of such minimal precautions. Moreover, there is no evidence that the inspection was actually carried out. We conclude that defendant Woolco has not sufficiently rebutted the presumption of negligence.
As to the defendant's contention that Mrs. Robinson was contributorily negligent, the record clearly establishes that prior to her fall, plaintiff was pushing a shopping cart which obscured her view of the floor in front of her. Additionally, plaintiff's attention was fixed upon the merchandise on the store's shelves. Under these circumstances, we do not think that the plaintiff's failure to notice the spilled paint remover amounts to contributory negligence. See Gonzalez v. Winn-Dixie, supra.

EVIDENTIARY MATTERS
Appellant assigns as error the trial court's ruling on the admissibility of certain hearsay testimony offered by the plaintiff over objection by Woolco. The claimed error arose when Mrs. Loretta Robinson, the plaintiff's sister-in-law, testified that following the slip-and-fall, the plaintiff stated that her injury and burns were causing her great pain. Although we agree that the witness' testimony was hearsay (in that an out of court declaration was offered to prove the truth of the matter asserted, therein, i.e. that the plaintiff was in pain), we recognize that such statements fall within an exception to the general rule against hearsay testimony. Considering that the plaintiff's extrajudicial statements were a natural and spontaneous expression of then-present bodily condition, and that such testimony has been traditionally viewed as reliable, we find no error in allowing the jury to hear the testimony. See McCormick on Evidence, § 291 Second Edition, 1972.
Appellant assigns as error the trial court's refusal to allow a can of KUTZIT paint remover to be admitted into evidence. Cross-examination of the proferring defense witness revealed that the can was not the one which had spilled, causing plaintiff's injury. Moreover, that witness could not say with certainty whether the can was of the same kind as that which caused the harm. We therefore find no error in the trial court's ruling that the evidence should not be admitted.
Appellant claims that the trial court erred in admitting into evidence photographs of the plaintiff's burns, arguing that the pictures were prejudicial and inflammatory. We see no merit to this assignment. During the trial, the plaintiff testified that a number of weeks after the accident, her husband confessed to her that he was repulsed by the burns on her body and no longer found her physically attractive. There was also dispute raised by the defendant as to whether the scars left by the burns would be permanent. The photographs corroborated prior testimony regarding the severity of the burns and the permanence of the scarring. They were therefore relevant and probative as to material facts in dispute and should have been admitted into evidence.

QUANTUM
Finally, appellant contends that the jury's award of $75,000.00 was excessive. At the outset, we observe several principles which must be borne in mind by an appellate court in review of quantum. In the assessment of general damages, much discretion must be left to the judge or jury. In Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1971), it was emphasized that: "before a Court of Appeal can disturb an award made by a trial court ... the record must clearly reveal that the trier of fact abused its discretion in making the award. Only *742 after making the finding that the record supports that the lower court abused its much discretion can the appellate court disturb the award, and then only to the extent of lowering it (or raising it) to the highest (or lowest) point which is reasonably within the discretion afforded that court." Id. at 335. (Italics supplied).
The procedure by which an appellate court reviews a jury's award is notable for its emphasis upon the particular circumstances of the case before the barthe type and extent of injury to this plaintiffrather than comparison with awards upheld by prior jurisprudence. Reck v. Stevens, 373 So.2d 498 (La.1979).
Viewing the particulars of this case, we observe that the damages awarded by the jury represent compensation for several types of injury: pain and suffering, caused by injury to the back, which has persisted even as of the time of trial; pain and suffering caused by the second-degree burnsand we note here that due to her pregnancy, the plaintiff was unable to receive any medication to relieve pain during the week-long period between the accident and the birth of her child; the immeasurable anxiety that was endured by plaintiff, who, faced with the imminency of her child's birth, suddenly was forced to confront the real possibility of tragic injury to her unborn child as a result of the fall; the fact that upon returning home from the hospital, Mrs. Robinson continued to suffer from the burns, and could not even assume a sitting position or take care of herself or her own child; Mrs. Robinson's knowledge that her burns have left her unattractive to her husband; the embarrassment felt by plaintiff as a result of her permanently scarred flesh. Considering all these to be the effects of defendants' negligence, we think the jury's award was within the reasonable limits of its great discretion. Accordingly, the award shall not be reduced.
For the reasons stated, the jury's verdict and award of damages are affirmed.
AFFIRMED.