556 So.2d 922 (1990)
Sharon C. BRUCE & John W. Bruce, Plaintiffs-Appellees,
v.
ROGERS OIL TOOL SERVICES, INC., et al., Defendants-Appellants.
No. 88-1110.
Court of Appeals of Louisiana, Third Circuit.
February 7, 1990.
*923 Sonnier & Hebert, Paul J. Hebert, Abbeville, and Daniel M. Barbato, Lafayette, for plaintiffs/appellees.
Juneau, Hill, Judice & Adley, P.L.C., Kraig Strenge, Lafayette, for defendant/appellant.
Hurlburt, Privat & Monrose, George R. Privat, Lafayette, for defendant/appellee, Dairyland.
Allen, Gooch, Bourgeois, Breaux, Robison & Theunissen, Thomas A. Budetti, Lafayette, for defendant/appellee, State.
Before DOMENGEAUX, C.J., and FORET and LABORDE, JJ.
FORET, Judge.
This action involves the issue of uninsured motorist coverage in an alleged "hit and run" accident. Petitioners, Sharon C. Bruce and her husband, John W. Bruce, brought this action against defendants, *924 Rogers Oil Tool Services, Inc. (Rogers Oil) and National Union Fire Insurance Company (National Union) for injuries sustained on January 9, 1986.
Defendants, Rogers Oil and National Union, moved for summary judgment against the Bruces on the basis that the uninsured or underinsured motorist coverage of the policy issued by National Union, insuring the 1980 Ford pickup involved in the accident, did not provide coverage for the damages sought. National Union contended that there was no actual contact between the insured truck and the unidentified vehicle as required in order to provide uninsured motorist coverage under the policy.
The Bruces also filed a motion for partial summary judgment as to the issue of uninsured motorist coverage.
Both motions for summary judgment were denied by the trial court. The Third Circuit granted writs on the issue and dismissed Rogers Oil from the lawsuit. Rogers Oil was dismissed because the pleadings did not allege that Rogers Oil was negligent or in any way caused injury to the plaintiffs. On writs, we found that the trial court was correct in denying summary judgment in favor of either the Bruces or National Union.
After trial by jury, judgment was awarded in favor of Sharon and John Bruce and against National Union. National Union appeals, contending that the trial court erred based upon several assignments of error, which are set forth below. Sharon and John Bruce answered the appeal, contending that the damages awarded by the jury were inadequate. We find no error in the judgment of the trial court and thus, we affirm.
FACTS
On January 9, 1986, at approximately 6:00 P.M., John and Sharon Bruce were traveling to the grocery store in a pickup truck owned by John's employer, Rogers Oil. It was dusk and rainy. They noticed a truck approaching from the opposite direction traveling very near or partially in their lane of traffic. John noticed, as the two vehicles began to pass in opposite directions, that the approaching truck was pulling a trailer which exceeded the truck in width. As John's pickup truck passed the midpoint of the trailer being pulled by the other vehicle, John and Sharon Bruce heard an explosion. Almost simultaneously, the pickup driven by John Bruce lost its brakes and steering and landed in a ditch on the right side of the road.
It was later determined that the explosion was the result of a twenty-pound metal disc slamming through the windshield of the Bruce vehicle. Sharon Bruce was severely injured as a result of the "buzz saw" action of the disc on the right side of her face. The driver of the oncoming truck and trailer did not stop and was never identified.
ASSIGNMENTS OF ERROR
National Union assigns the following as error:
A) WHETHER THE TRIAL COURT ERRED IN DENYING NATIONAL UNION'S MOTION FOR A DIRECTED VERDICT AND/OR MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT, OR IN THE ALTERNATIVE, MOTION FOR NEW TRIAL.
B) WHETHER THE TRIAL COURT ERRED IN DENYING NATIONAL UNION'S REQUESTED JURY INTERROGATORIES.
C) WHETHER THE TRIAL COURT ERRED IN DENYING NATIONAL UNION'S REQUESTED JURY CHARGES.
D) WHETHER THE TRIAL COURT ERRED IN DENYING NATIONAL UNION'S MOTION IN LIMINE.
E) WHETHER THE TRIAL COURT ERRED IN SEVERING NATIONAL UNION'S THIRD PARTY DEMAND AGAINST THE STATE OF LOUISIANA, DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT.
F) WHETHER THE TRIAL COURT ERRED IN GRANTING PRE-JUDGMENT INTEREST ON THE JURY'S AWARD FOR FUTURE LOSSES.
Prior to considering the issue of uninsured motorist coverage on its merits, we *925 will first dispose of the procedural issues urged by National Union.
VERDICT FORM
National Union proffered special jury interrogatories at trial, requesting specific factual findings. These were denied by the trial judge, who utilized general verdict forms with findings either in favor of the defendant or the plaintiffs, with special interrogatories for damage awards.
At trial and through appellate brief, National Union objects to the failure of the trial court to tender special interrogatories to the jury as to the negligence of the drivers of the two vehicles; the origin of the object which injured Sharon and/or; whether there was any direct contact between the two vehicles.
The issue as to any potential negligence on behalf of John Bruce, as driver of the vehicle involved in the accident, was not clearly raised by the pleadings[1] nor was there any evidence of such negligence presented at trial. See Streeter v. Sears, Roebuck & Co., Inc., 533 So.2d 54 (La.App. 3 Cir.1988), writ denied, 536 So.2d 1255 (La.1989). Therefore, any special interrogatory to the jury regarding the comparative negligence of John Bruce would have been misleading to the jury and unsupported by the record.[2]
As to the negligence of the "hit and run" driver, the trial court's charges to the jury clearly set forth that the Bruces had the burden of proof to show by a preponderance of the evidence that it was more probable than not that "the operator of the hit and run vehicle was at fault;" and "that such fault gave rise to damages." This instruction, together with a general verdict form, was sufficient.
As to National Union's objection that special interrogatories should have been propounded requiring the jury to make specific findings of fact as to the origin of the metal plate which injured Sharon and as to any contact between the vehicles, we find no error on the part of the trial judge. Again, the charges to the jury by the trial court were very clear in instructing the jury that, in order to find coverage, there must be an actual collision or the plate must have originated from the cargo of the hit and run vehicle. The instructions were also clear in stating that "[i]f you find that the object which struck Mrs. Bruce was not a part of the hit and run vehicle nor part of its load but was upon the roadway and was propelled into the insured vehicle, then there would be no `hit' as required by the provisions of the insurance policy."
It is implicit in the verdict of the jury that they found either an actual collision between the vehicles or found the plate to have originated from the cargo of the hit and run vehicle, or both. Therefore, we find special interrogatories unnecessary and find that this assignment of error is without merit.
JURY CHARGES
National Union contends that the trial court incorrectly charged the jury as to the law with regard to the physical contact requirement of National Union's policy. The court charged the jury as follows:
"The policy of insurance provides that an uninsured motor vehicle means a land motor vehicle or trailer: Which is a hit-and-run vehicle and neither the driver nor owner can be identified. The vehicle must hit an insured, the covered auto or a vehicle an insured is occupying."
The charges continued by stating that the plaintiffs had the burden of proof to show that a "hit or physical contact occurred *926 between the Bruce vehicle and a hit and run vehicle and neither the owner nor driver can be identified; ...". Finally, the trial court instructed the jury specifically as to the contact requirement, as follows:
"The `physical contact' or `hit' takes place when a vehicle or an integral part of it (including its load) comes into physical contact with another vehicle.
"I further instruct you that the word `hit' includes either an actual collision between the vehicles or a collision where an object is propelled in motion from the hit and run vehicle and this object physically contacts with the insured vehicle as a result of an unbroken chain of events with a clearly defineable beginning and ending, occurring in a continuous sequence. If you find that the object which struck Mrs. Bruce was not a part of the hit and run vehicle nor part of its load but was upon the roadway and was propelled into the insured vehicle, then there would be no `hit' as required by the provisions of the insurance policy."
We find that the trial court correctly instructed the jury as to the law with regard to the physical contact requirements of National Union's policy.
Additionally, National Union contends that the trial court erred in refusing to charge the jury, either through general charges or through National Union's requested charges, regarding contributory or comparative negligence on behalf of John or Sharon Bruce.
The basis of this contention is that the Bruces' negligence was alleged in the pleadings and therefore, the Bruces' negligence was put at issue.[3] National Union reasons that, therefore, the trial court, by refusing to instruct the jury on comparative negligence, took the issue from the jury.
In support, National Union shows that John Bruce testified that he diverted his eyes prior to the collision due to the oncoming bright lights; that Mr. Bruce did not realize until after the oncoming vehicle's headlights were past that it was pulling a trailer; that after Mr. Bruce saw how close the oncoming trailer was to his door he "knew" there was going to be a hit; and because if there had been an object in the road, at the speed he was traveling and depending upon where the object was, it would have been possible for him to have gone on the shoulder of the road to go around the object. National Union contends that this constitutes evidence of negligence on behalf of John Bruce. The trial court found otherwise, and we agree.
It is well settled that the judge has a duty to give instructions to the jury which properly reflect the applicable law in light of the pleadings and facts in each particular case. Proper jury instructions are those which fairly and reasonably point up the issues presented by the pleadings and evidence and provide correct principles of law for the jury to apply to those issues. See Fuller v. U.S. Aircraft Ins. Group, 530 So.2d 1282 (La.App. 2 Cir.1988), writ denied, 534 So.2d 444 (La.1988), cert. denied, ___ U.S. ___, 109 S.Ct. 1954, 104 L.Ed.2d 424 (1989); Adams v. Security Ins. Co. of Hartford, 533 So.2d 140 (La. App. 1 Cir.1988), affirmed in part and reversed in part, 543 So.2d 480 (La.1989). It is also the judge's responsibility to reduce the possibility of confusing the jury. Arnouville v. Joiner Enterprises, Inc., 423 So.2d 1246 (La.App. 5 Cir.1982), writ denied, 430 So.2d 76 (La.1983). Under the evidence presented herein, instructing the jury on comparative negligence would have merely confused the jury. We cannot say the trial judge abused his discretion in refusing to give the proposed charge. There were simply no facts in the record from which a jury could have concluded that the plaintiffs were comparatively negligent. Therefore, we find this assignment without merit.
MOTION IN LIMINE
National Union filed a Motion in Limine concerning the propriety of admitting certain photographs of Sharon Bruce taken by her primary treating physician, Dr. Terry Cromwell, prior to surgery. National Union *927 contends that the probative value of the photographs was outweighed by the inflammatory and prejudicial effect that the photographs might have on the jury. The motion was denied by the trial court and National Union moved for a mistrial, which was also denied. National Union assigns same as error.
Dr. Cromwell testified that he had never seen an injury like Mrs. Bruce's before. The photographs were taken as part of Dr. Cromwell's normal procedure for the purpose of monitoring her progress throughout her recovery period. Dr. Cromwell additionally testified that he attempted to choose photographs that would not be "too bad."
A portion of Mrs. Bruce's claim for damages relates to the depression and withdrawal symptoms which she experienced as a result of the disfiguring scar on her face. Although much improved at the time of trial, the photographs possessed probative value in showing the jury the magnitude and severity of her injuries. Therefore, they were relevant and probative as to material facts in dispute, i.e., the connexity of her emotional problems to her injury and her pain and suffering. See Robinson v. F. W. Woolworth & Co., 420 So.2d 737 (La.App. 4 Cir.1982). We have viewed the photographs and, although they are quite unpleasant, we do not find them so gruesome that the potential for prejudice outweighs the relevancy of the photographs. Thus, we do not find the trial court erred in admitting them into evidence.
SEVERANCE OF THIRD PARTY DEMAND
National Union contends that the trial court erred in severing its third party demand against the State of Louisiana, Department of Transportation & Development.
La. C.C.P. art. 1038 states that "[t]he court may order the separate trial of the principal and incidental actions,...."
The original petition against National Union was filed in July of 1986. National Union's third party demand against the State was filed on or about July 16, 1987, after the plaintiffs had moved for an order setting the original demand for trial. National Union did not begin discovery against the State until March of 1988, less than a month prior to the discovery deadline of April 1, 1988. This discovery deadline had been set by pre-trial order dated September 1, 1987. Further, the third party demand of National Union against the State had not been answered as of May 10, 1988, the trial date.
Under these facts, the trial court did not err in severing National Union's demand against the State in order to avoid unnecessary delays. See Lowentritt v. Lowentritt, 370 So.2d 157 (La.App. 3 Cir. 1979); Herb's Mach. Shop., Inc. v. John Mecom Co., 426 So.2d 762 (La.App. 3 Cir. 1983), writ denied, 430 So.2d 98 (La.1983). We do not find that the trial court abused its discretion in ordering separate trials of the principal and incidental actions herein.
PRE-JUDGMENT INTEREST ON FUTURE LOSSES
National Union contends, by this assignment of error, that judicial interest on the future damages awarded should accrue from date of judgment rather than from date of judicial demand.
La. R.S. 13:4203 states:
"Legal interest shall attach from date of judicial demand, on all judgments, sounding in damages, `ex delicto', which may be rendered by any of the courts."
No distinction is made, either by statute or jurisprudence, between interest on past or future damages. See In re Air Crash Disaster Near New Orleans, La. on July 9, 1982, 767 F.2d 1151 (C.A. 5 1985); Schwamb v. Delta Air Lines, Inc., 516 So.2d 452, 467 (La.App. 1 Cir.1987), writ denied, 520 So.2d 750 (La. 1988). Unless the Louisiana Legislature acts to change the law, the trial court did not err in applying the present law of Louisiana. Therefore, we find no merit in this assignment of error. *928 DENIAL OF MOTION FOR DIRECTED VERDICT AND/OR MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT, OR IN THE ALTERNATIVE, MOTION FOR A NEW TRIAL.
After the Bruces had rested their case, National Union moved for a directed verdict, which was denied. At the conclusion of the trial, National Union moved for a judgment notwithstanding the jury's verdict or, in the alternative, a motion for new trial. These motions were also denied by the trial court. National Union contends, by this appeal, that the denial of these motions was error.
The evidence at trial established that, more probable than not, the 20-pound metal plate was set in motion by the unidentified truck and trailer and was the object which hit the Bruce vehicle, pierced the front windshield, sliced Mrs. Bruce's face, and exited through the rear windshield.
Mr. Bruce testified that, almost simultaneously with the explosion, he lost control of his steering and brakes. The vehicle was not available at trial insofar as it had been sold several weeks after the accident.
National Union contends that the evidence was insufficient to prove that there was a direct "hit" between the two vehicles to trigger uninsured motorist coverage. Together with this contention, they argue that, if there was no direct contact between the two vehicles, uninsured motorist coverage would not apply.
Dr. Bernard, plaintiff's expert in the field of physics, testified that the most probable explanation of how the accident occurred was that the metal plate originated from the unidentified trailer bed and proceeded into the Bruce vehicle, injuring Sharon.
The crux of National Union's contention is that if the jury found that the metal plate was dislodged from the cargo of the unidentified truck and trailer, and hit plaintiffs' windshield, this would not qualify as a "hit" for purposes of uninsured motorist coverage.
The uninsured motorist provisions of National Union's policy, at issue herein, provides that "[t]he [hit and run] vehicle must hit an insured, a covered auto, or a vehicle an insured is occupying."
The trial court instructed the jury that if they found that the vehicle's load, i.e., the metal disc or plate, came into contact with the other vehicle, this contact was sufficient to trigger the uninsured motorist provision of National Union's policy. We agree with the trial court's charge to the jury that contact or collision with dislodged cargo in an unbroken series of events satisfies the "physical contact" or "hit" requirement of National Union's policy.
Although this Circuit has not been confronted with the factual situation at issue herein, our brethren in the Fourth Circuit decided in favor of the insured under similar circumstances in Fore v. Travelers Ins. Co., 528 So.2d 1091 (La.App. 4 Cir.1988). In Fore, the issue before the Court was whether dirt and debris which fell from a preceding truck onto the plaintiff's windshield and hood, resulting in injury to plaintiff, established sufficient "contact" to trigger the uninsured motorist provisions of plaintiff's automobile policy.
The Fourth Circuit, citing Springer v. Government Employees Insurance Co., 311 So.2d 36, 39, 40 (La.App. 4 Cir.1975), writ denied, 313 So.2d 598 (La.1975), stated, at pages 1092, 1093:
"We hold that the [words] the `physical contact of such vehicle' includes the physical contact of that vehicle with an intermediate vehicle or other object which, in the same mechanism of the accident, strikes the assured's vehicle. We limit this to the type of factual situation existent here. Specifically, the injury causing impact must have a complete, proximate, direct and timely relationship with the first impact between the hit-and-run vehicle and the intermediate vehicle. In effect, the impact must be the result of an unbroken chain of events with a clearly definable beginning and ending, occurring in a continuous sequence."
The Fore court also discussed the policy reasons for requiring physical contact in the context of hit and run cases as follows, at page 1093:

*929 "We are satisfied that our holding does no violence to the purpose of the policy's `physical contact' requirement. The `physical contact' requirement is not a mere technicality. It is a safeguard against fraud. Springer, 311 So.2d at 44. If `miss-and-run' accidents were covered by uninsured motorist insurance, then drivers injured in one-car collisions could easily blame a non-existent miss and run car. Id. Cases with actual physical contact, hit-and-run cases, are far more likely to leave tangible evidence such as damage to the plaintiff's car. This is about as equally likely to occur with `intermediate object' impact as with `intermediate car' impact and direct contact with uninsured vehicles."
The jury verdict, in this case, does no violence to the "contact requirement" safeguard against fraud in uninsured motorist cases. There is no doubt that an accident occurred as a result of the movement of an unidentified vehicle and no doubt that Sharon was injured as a result of the accident.
We find that a reasonable juror could have found that the metal plate or disc originated from the unidentified trailer or that the trailer bumped the Bruce vehicle, causing it to lose control, or both. Dr. Bernard was well qualified and well prepared, and we find that a reasonable juror could have accepted his version of the facts.
Additionally, National Union contends that the jury verdict is contrary to the law and evidence insofar as the plaintiffs have not proven that the driver of the unidentified vehicle was at fault. We find that, under the evidence presented, a reasonable juror could have found that the driver of the unidentified vehicle was negligent in either leaving his lane of traffic and/or failing to secure the cargo on the trailer. Thus, we find that, on these facts, this contention is without merit.
After a review of the evidence and testimony, we determine that the jury verdict was fair and not contrary to the law and evidence presented at trial. Therefore, the trial judge correctly denied National Union's motion for new trial. See, La. C.C.P. art. 1972.
As to National Union's contention that the trial court erred in denying its motion for directed verdict, the Louisiana Supreme Court, in Hastings v. Baton Rouge Gen. Hosp., 498 So.2d 713 (La.1986), set forth the proper standard as follows:
"A directed verdict should only be granted when the facts and inferences point so strongly in favor of one party that the court believes reasonable people could not reach a contrary verdict. It is appropriate, not when there is a preponderance of evidence, but only when the evidence overwhelmingly points to one conclusion. See Scott, et al. v. Hospital Service District No. 1 of the Parish of St. Charles, et al., 496 So.2d 270 (La. 1986); Breithaupt v. Sellers, 390 So.2d 870 (La.1980)." Id., at 718.
We cannot say that the evidence in this case pointed overwhelmingly in favor of National Union or that the jury was unreasonable in its verdict. Therefore, we find no error on the part of the trial court in denying National Union's motion for directed verdict.
Similarly, the standard for granting a motion for judgment notwithstanding the verdict is akin to that for a directed verdict. This standard is set forth by the Louisiana Supreme Court in Scott v. Hosp. Serv. Dist. No. 1, 496 So.2d 270 (La.1986), at 273, as follows:
"The rules governing a motion for judgment notwithstanding the verdict are found in LSA-C.C.P. art. 1811. The article does not specify the grounds on which the trial judge may set aside a jury verdict. The Official Revision Comments state that `... a judgment N.O.V. is based on a different standard [from additur and remittur]namely, that based on the evidence there is no genuine issue of fact. Thus where the trial court is convinced that, under the evidence, reasonable minds could not differ as to the amount of damages [or as to liability], it should have the authority to grant the appropriate judgment notwithstanding the verdict.'" *930 Under this standard, we cannot say that the trial court erred in refusing to set aside the jury verdict.
ANSWER TO APPEAL
Appellants, John and Sharon Bruce, have answered this appeal alleging that the damages awarded were inadequate. After a review of the record, testimony, and evidence therein, we find no error on the part of the jury as to the amount of damages awarded and thus, we affirm the judgment of the trial court.
CONCLUSION
Based upon the foregoing, the judgment of the trial court is affirmed. Costs of this appeal are assessed to National Union Fire Insurance Company, appellant herein.
AFFIRMED.
NOTES
[1] Apparently the allegation of John Bruce's negligence was pleaded in National Union's first supplemental and amending answer wherein they incorporated the affirmative defenses set forth in the original answer. The original answer alleged that Sharon Bruce was negligent and that the accident was caused "by the fault of third persons for whose conduct appearers are not responsible."
[2] We do not find Lemire v. New Orleans Public Ser., Inc., 458 So.2d 1308 (La.1984), requiring the court to submit special interrogatories to the jury, applicable in this action. Lemire explains the proper use of La. C.C.P. art. 1812 C when the facts involve comparative fault. We do not find the mandate set forth in Lemire appropriate where there is no evidence of comparative fault.
[3] See footnote 1, supra.