O.E. PRICE, Judge Pro Tem.
George Lane, Jr. brought action against American Dairy Queen, Inc. and its insurer, Zurich-American Insurance Company for damages sustained in a slip and fall accident.
FACTS
George Lane entered the Dairy Queen in Mansfield about 9:00 p.m. on July 27, 1987, a Sunday evening. He ordered a cup of ice and paid for his purchase. He proceeded to exit the building and, just outside the *812 front door, slipped and fell on the “handicapped” ramp, a small incline rising from the parking lot to the building slab. All witnesses’ testimony agree that Lane fell but varies greatly from this point. For example, Lane’s witnesses testified that they assisted him up and to his car; Dairy Queen’s witnesses insist it was they who first reached Lane. The trial judge noted that this testimony was not germane to the issues of the fall and the inspection procedure.
Significant and relevant testimony came from Gary Speights, the manager, who testified that he inspected the parking lot and front door some 45 minutes to one hour prior to the accident and described the usual cleanup procedure of the business. No one, except Lane, testified that he observed any liquid on the ramp after the fall.
Suit was filed on July 27, 1988. Following a bifurcated trial on liability only, the trial judge filed his written opinion on September 1, 1989, rejecting plaintiff’s demands.
The trial court accepted Lane’s testimony that he had slipped on “some coke or ice cream” on the surface of the ramp. The court considered and rejected the idea that an employee had caused the spill. Further, the court found that Dairy Queen maintained reasonable, periodic inspections to insure the safety of the customers. Citing the manager’s testimony that he had examined the area some 45 minutes to an hour before the accident, the court concluded that this was sufficient to exculpate Dairy Queen. Judgment was rendered on September 19, 1989, rejecting all of Lane’s demands. This appeal followed.
On appeal, Lane contends that he proved a prima facie case against Dairy Queen and that Dairy Queen failed to prove that its cleanup procedures were reasonable.
LAW AND ANALYSIS
Although the trial judge accepted Lane's testimony that he fell because of a spillage on the ramp which met the burden of establishing a prima facie case against defendants, the trial judge further concluded that Dairy Queen met its burden and exculpated itself from liability. We must determine if that conclusion is clearly erroneous, manifestly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989).
Once a prima facie case was made, the burden shifted to Dairy Queen to produce evidence that the spill was not caused by one of its employees and that Dairy Queen had adequate inspection and cleanup procedures in place to discover and correct hazards on the premises. McCardie v. Wal-Mart Stores, Inc., 511 So.2d 1134 (La.1987); Brown v. Winn Dixie Louisiana, Inc., 452 So.2d 685 (La.1984).
The trial judge considered and rejected the idea that an employee caused the spill. One prong of the standard requires the store operator to prove that his employees did not cause the hazard, which is a requirement first laid down in Brown, supra, and again in McCardie. However, these cases deal with large discount or grocery stores. The common thread in this jurisprudence is the fact that the establishments are self-service, where employee- or patron-created hazards are common. In the case sub-judice, the Dairy Queen is not a self-service establishment as customers are served by the employees from a counter. The record is devoid of any testimony or suggestion that an employee caused the spill. To the contrary, Gary Speights, the manager, testified that he personally conducted the inspections that evening so that the trial judge’s inference that no employee could have caused the spill, because none were in the area that evening, is reasonable in these circumstances.
Nor was the trial judge’s conclusion that the inspection and cleanup procedure was adequate in the circumstances and adhered to manifestly erroneous, clearly wrong. Both Lane’s witnesses and Dairy Queen’s witnesses testified that the premises were kept clean and neat. Speights testified that inspection and cleanup occurred four times daily, at opening, at closing, in the early afternoon and at 5:00 p.m. In addition, hourly inspections were done, with cleanup as necessary. While there was some conflict in testimony whether or not the procedures were adhered to earlier in the day, Speights testified that he per *813 sonally performed the inspection some 45 minutes to an hour before Lane’s fall. This testimony is an adequate basis upon which the trial judge could base his conclusion that the procedures were in place and adhered to. On the record, we cannot say that this conclusion is manifestly erroneous, clearly wrong.
Plaintiff also contends that even if procedures were in place and adequately adhered to, the presence of an undiscovered spill for some time between 45 minutes to one hour shows that the procedures were inadequate to maintain the premises reasonably free from hazard. However, the cases specifically cited by plaintiff, Robinson v. F.W. Woolworth, & Co., 420 So.2d 737 (La.App. 4th Cir.1982) and Fontanille v. Winn-Dixie Louisiana, Inc., 260 So.2d 71 (La.App. 4th Cir.1972), deal with large grocery stores.
In this case, the Dairy Queen is not a large discount or grocery store in which the risk of hazard, employee- or patron-created, is an almost constant danger. While there was testimony by Speights and others that the Dairy Queen did a “good” business, we note as did the trial judge that these premises are located in the relatively small town of Mansfield, serving the town and surrounding rural area. This is not a large volume, fast-food franchise in which, like the large discount or grocery store, the risk of employee- or patron-created hazard is almost constant. To the contrary, the risk of hazard in these types of operation is relatively low. Again, we find the cases cited by plaintiff in support of this argument to be distinguishable and conclude that the trial judge correctly applied the legal standard.
DECREE
We cannot say that the trial judge was manifestly erroneous, clearly wrong. We affirm the trial court’s ruling and assess costs of the appeal against the appellant.
AFFIRMED.