759 So.2d 214 (2000)
Donald RENER, et al.
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY.
No. 99-1703.
Court of Appeal of Louisiana, Third Circuit.
April 5, 2000.
*215 Cameron B. Simmons, Jeanerette, Louisiana, Counsel for Plaintiffs/Appellees.
Kenny L. Oliver, Rowe, Bares & Oliver, L.L.C., Lafayette, Louisiana, Counsel for Defendant/Appellant.
Court composed of Judge HENRY L. YELVERTON, Judge BILLIE COLOMBARO WOODARD, and Judge GLENN B. GREMILLION.
WOODARD, Judge.
In this appeal, we must decide whether genuine issues of material fact remain regarding an automobile accident involving an unidentified eighteen-wheeler-truck. Purportedly, the truck lost a metal part, which caused a following vehicle to spiral out of control before colliding with the highway's emergency lane's guardrail. If proven, Plaintiffs would be entitled to the benefits of an Uninsured/Underinsured Motorist (UM) policy which State Farm Mutual Automobile Insurance Company (State Farm) issued on their vehicle. On summary judgment, the trial court denied State Farm's motion for summary judgment to dismiss Plaintiffs' action and found that Plaintiffs are entitled to UM coverage.
UM coverage is triggered when there is (1) a physical contact which occurs as a result of (2) an unbroken chain of events between two vehicles, providing that debris falling from a vehicle and hitting the other satisfies this physical contact requirement. We find that genuine issues of material fact remain regarding the "unbroken chain of events" requirement and that Plaintiffs satisfied their burden of proving the existence of a physical contact. Thus, we reverse the trial court's grant of Plaintiffs' motion for summary judgment, but affirm its denial of State Farm's motion.
This litigation arose out of Mr. Ronald Rener's automobile accident on Interstate 610 (I-610) in Houston, Texas, on July 26, 1997. Earlier that day, he was driving his 1993 Ford Aerostar from his home in Jeanerette, Louisiana, to pick-up his son, Ronald, from his aunt's house in Greenwood, Texas. Mr. Arnold Joseph, Mr. Rener's cousin, sat in the front passenger seat, Ms. Shirley Rener, Mr. Rener's wife, sat directly behind Mr. Joseph, and the Reners' foster daughter, Reagan Jenkins, sat directly behind Mr. Rener in the back of the van.
The family traveled east on Interstate 10 for some time before exiting onto 610's northbound lane. Subsequently, they traveled north for approximately one mile. Mr. Rener explains that it was raining, had been raining for some time, and the traffic appeared congested. He remembers vehicles on both sides of the van. Because the rain decreased his visibility, he turned on his head lights and operated his windshield-wipers in the fast speed mode. He was driving at fifty to sixty miles-per-hour when he suddenly lost control of his vehicle. He tried to apply his brakes and steer the van, but it spiraled out of control, with the front passenger side striking the emergency lane's guardrail, first, before completing one full circle. As a result, the van became inoperable. The collision caused the right front passenger side door to fall off, the rear tailgate to jam up and bend, shattered some of the van's windows, and blew-out three tires.
When asked to recall the circumstances of the accident, he assured that he did not believe that his van hydroplaned, and he did not perceive standing water on the highway before losing control. He does not recall whether the van hit something on the highway, as he explains that his mind focused on the unavoidably forthcoming accident once he lost control.
After his van came to a stop, Mr. Rener asserts that a person (John Doe) told him that an eighteen-wheeler-truck (the truck) had dropped some debris, which he subsequently *216 saw coming out from underneath Mr. Rener's van as it spiraled out of control. Allegedly, John Doe called 911 and stayed until the police arrived. He showed Mr. Rener the object which he observed falling from the truck. Mr. Rener describes the object as a big metallic device, looking like a "flapper" which can be found between a truck's wheels.
Officer Clement J. Burt, with the Houston Police Department, reported to the scene and investigated the accident. In his October 30, 1998 deposition, he stated that he has been tendered as an expert in accident reconstruction in previous civil cases. Upon arriving, he noted that Mr. Rener had told him that he lost control of his van as he hit some metal piece which fell off of a truck. The officer found the metal part and explained that it could have come off an eighteen-wheeler-truck. Finding it possibly dangerous to other drivers, he removed it from the roadway. Officer Burt did not report or remember talking to any witnesses which may have corroborated Mr. Rener's accounts. Nevertheless, his investigation revealed evidence of impact to the van's undercarriage. He noted in his accident report that the undercarriage's damage resulted from hitting the piece of metal which he had found on the roadway. He did not issue any citations to Mr. Rener, as he found his version of the accident to be credible and did not discover any inconsistent or contradicting evidence.
All four of the van's occupants alleged that they suffered various damages and injuries, which they sought to recover under Mr. Rener's UM coverage. State Farm denied coverage. On December 7, 1997, all four of the van's occupants (Plaintiffs) filed suit against State Farm. The Plaintiffs and State Farm each moved for summary judgment. After a hearing on January 22, 1999, the trial court found the Plaintiffs to be entitled to the benefit of State Farm's UM coverage and denied State Farm's motion. State Farm appeals.
We review summary judgments de novo under the same criteria that the trial court adopted.[1] Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law.[2]
La.Code Civ.P. art. 966, charges the moving party with the burden of proving that summary judgment is appropriate. In doing so, the moving party's supporting documentation must be sufficient to establish that no genuine issue of material fact remains at stake.[3] Once the mover makes a prima facie showing that there is no genuine issue as to a material fact and that summary judgment should be granted, the burden shifts to the nonmover.[4] Furthermore, La.Code Civ.P. art. 967 provides, in pertinent part:
When a motion for summary judgment is made and supported as provided above, an adverse party may not rest on the mere allegations or denials of his pleadings, but his responses by affidavits or otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him.
The threshold question in reviewing a trial court's grant of summary judgment is whether a genuine issue of material fact remains.[5] If not, then, we must determine *217 whether reasonable minds could conclude, based on the facts presented, that the mover is entitled to judgment.[6] Accordingly, summary judgment is apropos when all relevant facts are brought before the court, the relevant facts are undisputed, and the sole remaining issue relates to the legal conclusion to be drawn from the facts.[7]
Facts are material if they determine the outcome of the legal dispute.[8] The determination of the materiality of a particular fact must be made in light of the relevant substantive law.[9] In an action alleging entitlement to the benefit of UM coverage, the claimant bears the burden of proving, by a preponderance of the evidence, the existence of a physical contact with another vehicle.[10] The physical contact between two vehicles need not be direct, as the falling of debris from a vehicle hitting another has been recognized to satisfy the requirement.[11]
In Bruce,[12] we found that the following jury instruction reflected this circuit's jurisprudence, when it set forth that:
The "physical contact" or "hit" takes place when a vehicle or an integral part of it (including its load) comes into physical contact with another vehicle.
I further instruct you that the word `hit' includes either an actual collision between the vehicles or a collision where an object is propelled in motion from the hit and run vehicle and this object physically contacts with the insured vehicle as a result of an unbroken chain of events with a clearly defineable [sic] beginning and ending, occurring in a continuous sequence. If you find that the object which struck Mrs. Bruce was not a part of the hit and run vehicle nor part of its load but was upon the roadway and was propelled into the insured vehicle, then there would be no `hit' as required by the provisions of the insurance policy.
(Emphasis added.) Thus, a claimant has the original burden of proving (1) the existence of a physical contact, (2) resulting from an unbroken chain of events with a clearly definable beginning and ending, occurring in a continuous sequence.

PHYSICAL CONTACT
Our de novo review of the record reveals that the following facts are not genuinely disputed, to wit:
1. Mr. Rener lost control of his van and hit a guardrail, damaging his van;
2. He did not see any obstruction on the highway and does not recall feeling an impact. He remembers being drawn into the fear of his impending accident.
3. Presence of an eighteen-wheeler truck in front of Mr. Rener's van immediately before the accident occurred.
4. The absence of a water puddle on the highway likely to have caused his van to hydroplane. Mr. Rener testified that he did not feel that he had hydroplaned and did not see any puddle of water on the highway before the accident. Officer Burt did not notice any contradicting evidence to Mr. Rener's statements of the event.
5. Presence of an unidentified metal part on the highway.

*218 6. Presence of an impact to the van's undercarriage.
In sum, the record establishes that a metal part present on the highway hit Mr. Rener's van, causing it to spiral out of control and hit the emergency lane's guardrail. Accordingly, the physical contact requirement is satisfied.

UNBROKEN CHAIN OF EVENTS
The second requirement which our jurisprudence sets forth provides that the physical contact must occur "as a result of an unbroken chain of events with a clearly defineable [sic] beginning and ending, occurring in a continuous sequence."[13] In other words, this requirement would not be satisfied if the debris, which impacted Mr. Rener's vehicle had just been in the roadway, dropped at some other time. Our de novo review of the record reveals that genuine issues of material facts remain disputed regarding this requirement.
Mr. Rener candidly admits that he did not see the metal part fall from the truck and admits gaining knowledge of this fact from John Doe's statements. Indeed, Mr. Rener, stated that John Doe told him that the piece of metal fell from the truck which he followed, and that it came out of his vehicle after it collided with the guardrail. Then John Doe called 911, waited for the police to arrive, and talked to Officer Burt about the metal part. Clearly, Mr. Rener's assertions regarding John Doe's statements and actions are hearsay evidence. Usually such evidence is inadmissible at trial, unless, among other exceptions, it qualifies under the exited utterance exception to the hearsay rule set forth in La.Code Evid. art. 803(2). Under this exception, the statement must relate to the occurrence of a startling event and must be made while the declarant is under the stress of the excitement caused by the event.[14] Our review of the record in the case sub judice indicates that the trial court could find John Doe's statements admissible under this exception, as they were allegedly made immediately after observing the occurrence of the circumstances leading to the accident.
Officer Burt's testimony on this issue in not conclusive, although it tends to corroborate Mr. Rener's and allegedly John Doe's version of the events. Namely, he stated that the damage to the van's undercarriage could have resulted from hitting the piece of metal he found on the highway and that his "educated guess" was that such a metal part came from an eighteen-wheeler-trucks body. He also asserted that numerous eighteen-wheeler-trucks proceed through this part of the highway every day.
State Farm asserts that, through his own fault, Mr. Rener could have lost control of his van and hit the metal part as he drove on the emergency lane and hit the guardrail. It takes issue with Mr. Rener's version of the events by attempting to impeach his credibility regarding John Doe's alleged statements. To substantiate its claim, it relies on Officer Burt's testimony that he did not remember speaking to any witnesses other than Mr. Rener, thus impliedly contradicting Mr. Rener's assertions. This creates a genuine issue of material fact, which is directly material to the existence of an unbroken chain of events leading to the accident and which requires evaluating the parties' credibility. Such an evaluation is not proper on summary judgment and must be made by the trier of facts. Accordingly, we reverse the trial court's decision, granting Plaintiffs' motion for summary judgment.
State Farm asserts that it is entitled to summary judgment because Plaintiffs cannot prove their case by independent and disinterested witnesses, as required by La. R.S. 22:1406(D)(1)(d)(i) and La.R.S. 22:1406(D)(1)(f). Given our prior discussion, we find this assignment of error meritless. Accordingly, we affirm the trial *219 court's denial of State Farm's motion for summary judgment.

CONCLUSION
After reviewing the record de novo, we find that genuine issues of material fact remain in dispute regarding the "unbroken chain of events" requirement. Accordingly, the trial court's motion for summary judgment, finding the Plaintiffs to be entitled to the State Farm UM coverage, is reversed. For the same reasons, we affirm the trial court's denial of State Farm's motion for summary judgment. We remand the case to the trial court for trial on the merits.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
NOTES
[1] Schroeder v. Board of Sup'rs of La. State Univ., 591 So.2d 342 (La.1991); Soileau v. D & J Tire, Inc., 97-318 (La.App. 3 Cir. 10/8/97); 702 So.2d 818, writ denied, 97-2737 (La.1/16/98); 706 So.2d 979.
[2] La.Code Civ.P. art. 966(B).
[3] Townley v. City of Iowa, 97-493 (La.App. 3 Cir. 10/29/97); 702 So.2d 323.
[4] Id.
[5] Kumpe v. State, 97-386 (La.App. 3 Cir. 10/8/97); 701 So.2d 498, writ denied, 98-50 (La.3/13/98); 712 So.2d 882.
[6] Id.
[7] Id.
[8] Soileau, 702 So.2d 818.
[9] Id.
[10] Torres v. Doe, 96-830 (La.App. 5 Cir. 1/28/97); 688 So.2d 125.
[11] Bruce v. Rogers Oil Tool Servs., Inc., 556 So.2d 922 (La.App. 3 Cir.1990), Springer v. Government Emp. Ins. Co., Inc., 311 So.2d 36 (La.App. 4 Cir.), writ denied, 313 So.2d 598 (La.1975); Fore v. Travelers Ins. Co., 528 So.2d 1091 (La.App. 4 Cir.1988).
[12] 556 So.2d at 926.
[13] Id.
[14] La.Code Evid. art. 803(2)