854 So.2d 898 (2003)
Robert WEINGARTNER
v.
LOUISIANA ICEGATORS.
No. WCA 02-1181.
Court of Appeal of Louisiana, Third Circuit.
April 17, 2003.
Writ Denied September 19, 2003.
*899 Robert L. Hackett, Attorney at Law, New Orleans, LA, for Plaintiff/Appellant, Robert Weingartner.
Michael Kevin Springmann, Attorney at Law, Covington, LA, for Defendant/Appellee, Louisiana Ice Gators.
Court composed of NED E. DOUCET JR., Chief Judge and ULYSSES GENE THIBODEAUX and ELIZABETH A. PICKETT, Judges.

FACTS
PICKETT, Judge.
On May 9, 2000, Robert Weingartner was employed by the Louisiana IceGators as a professional hockey player. On that date, Weingartner allegedly suffered injuries to his neck and head when he was hit from behind and pushed into some end boards during the course of a hockey game.
On July 6, 2001, Weingartner filed a disputed claim for compensation and the matter was sent to mediation. The parties were unable to fully resolve the matter in mediation and the matter was set for trial.
Prior to the trial, the employer filed a motion for summary judgment alleging that the claimant had violated La.R.S. 23:1208 by making false statements and misrepresentations for the purpose of obtaining workers' compensation benefits. On May 30, 2002, a hearing on the motion was held. The workers' compensation judge granted the employer's motion for summary judgment, finding that the claimant had committed fraud. It is from this ruling that the claimant appeals.

DISCUSSION
In his sole assignment of error, the claimant contends that the workers' compensation judge erred in rendering summary judgment.
Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Potter v. First Federal Savings & Loan Ass'n, 615 So.2d 318 (La. 1993). A motion for summary judgment should be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there exists no genuine issue as to any material fact and that the mover is entitled to judgment as a matter of law. La.Code Civ. P. art. 966; Haywood v. Louisiana Sugar Cane Products, 96-1151 (La.App. 3 Cir. 3/5/97); 692 So.2d 524.
Summary judgment is appropriate when all relevant facts are brought before the court, the relevant facts are undisputed, and the sole remaining issue relates to the legal conclusion to be drawn from the facts. Facts are material if they determine the outcome of the legal dispute. The determination of the materiality of a particular fact must be made in light of the relevant substantive law. Rener v. State Farm Mut. Auto Ins. Co., 99-1703, (La. App. 3 Cir. 4/5/00); 759 So.2d 214.
*900 In the present case, the issue before us is whether there is a genuine issue of material fact remaining concerning whether the claimant forfeited his rights to benefits by committing fraud in violation of La.R.S. 23:1208.
Under La.R.S. 23:1208, in order for there to be a forfeiture of benefits, the claimant must have: 1) made a false statement or representation; 2) willfully made the statement or misrepresentation; and 3) made the statement or misrepresentation for the purpose of obtaining or defeating any benefits or payments. Resweber v. Haroil Constr. Co., 94-2708 (La.9/5/95); 660 So.2d 7.
The burden in this summary judgment proceeding is on the moving party to establish the claimant violated La. R.S. 23:1208 and, therefore, movant is entitled to judgment as a matter of law.
In the memorandum attached to its Motion For Summary Judgment, the appellee claimed the claimant made false statements in his deposition which are clearly contradicted by his medical records. Specifically, the appellee argues that in his deposition, the claimant specifically denied that any doctor had ever told him he had a concussion before working for the Louisiana IceGators, denied he had ever been to the hospital after having a concussion, and denied receiving medical treatment for a concussion prior to May 9, 2000. Further, the claimant denied he had ever told a physician or medical care provider that he had problems thinking, concentrating, or remembering prior to the May 9, 2000 work accident. Appellee argues the medical records of Dr. Kim Edward Leblanc show these statements given at deposition are not true.
The appellee also alleges the claimant stated in his deposition that he could not rotate his head to the left and line his chin over his left shoulder, and that he could almost line his chin over his shoulder. The appellee argues video surveillance tape shows otherwise.
The workers' compensation judge found the claimant committed fraud, although it is somewhat difficult to determine from her oral reasons to determine precisely the basis for the ruling. This court has conducted a de novo review of the record, as required by law, and we disagree with the conclusion of the workers' compensation judge.
The employer alleges the claimant lied in his deposition when he denied any doctor had ever told him that he had a concussion before his May 9, 2000 accident. The employer further alleges the claimant lied in his deposition when he denied he received medical treatment for any concussion prior to his May 9, 2000 accident. The employer argues the records and deposition of Dr. Kim Edward LeBlanc prove otherwise. Having reviewed Dr. LeBlanc's deposition, we disagree that his testimony establishes the claimant made false representations. Dr. LeBlanc's testimony does not establish he told the claimant he had diagnosed a concussion. Regarding his prior examinations of the claimant, Dr. LeBlanc, who is the team physician, testified as follows:
Q: Okay. I'd like to turn to the script dated April 13, 2000. Do you recall why Mr.____
A: What day was that again?
Q: April 13, 2000
A: Okay.
Q: Do you recall why Mr. Weingarter came to see you on or about that date?
A: Not really, no.
Q: Okay.

*901 A: I mean, if you'd jog my memory perhaps. I know I saw him. I don't have any recollections.
Q: Okay, Doctor. Other than what's recorded on the script itself?
A: No, the only thing is that script is I rememberthe thing is sometimes when I write those scripts I may see one of the Ice Gators. I may or may not see them at that time. Sometimes if we're following them like I've seen him after a game or something like that and usually what I would do is tell the trainer that if he doesn't improve that I want the MRI, just let me know. So what he'll let me know and he's in touch with me. So what happens is I won't necessarily see him on that particular day if I don't think it's necessary, and I'll just write the script, and they'll get the scan.
* * *
Q: I understand that. Do you recall the other occasion or any on the other occasions specifically where you rendered treatment to him for a concussion?
A: Well, at the Cajundome, yes, after a game or during a game I would have seen him, yes. I remember that.
Q: All right. So if he testified under oath that prior to May 9, 2000 he had never had any medical treatment for a concussion, he would have been incorrect in that testimony?
A: Well, no, not really. I mean, he didn'tdepends on how you define that. Usually a concussion needs no quote medical treatment unquote.
We find nothing in this testimony that impeaches the claimant's deposition testimony. It is clear from the doctor's deposition that the MRI ordered, and the information given to the doctor regarding prior concussions, could have likely come from the trainer. The claimant specifically stated in his deposition that he had been told by trainers on occasions prior to the May 9 injury that he had concussions. Further, there is nothing in the evidence that suggests the claimant directly told the team physician he had memory loss resulting from a concussion prior to May 9, 2000. The doctor noted there was memory loss, that the claimant was repeating himself, but does not state if that information came directly from the claimant, if it was noted by observation, or if the information came from the trainer. We further note this prior injury, for which a MRI was ultimately performed, was also an on the job injury. The employer was aware of it and, in fact, the claimant's medical needs were addressed at the employer's direction. This was an injury the team physician considered when determining, after the May 9, 2000 injury, that the claimant should no longer play ice hockey. It is obviously a fact of which the employer was aware and the claimant never tried to hide.
Since we find nothing in the team physician's deposition that impeaches the claimant's sworn testimony, the evidence certainly falls short of establishing fraud under 23:1208.
The appellee further argues the claimant lied about his physical limitations and the degree to which he could turn his head to the left and right. The appellee points to video surveillance which shows the claimant mowing a lawn which required him to move his head from side to side.
The claimant freely testified as to his activities regarding his lawn service and what he is physically required to do to *902 operate that service. We find nothing inconsistent with his testimony regarding his physical limitations, what he would do, although it might be painful, and the video surveillance. Moreover, the claimant seeks workers' compensation benefits because of his inability to play ice hockey as a result of the numerous concussions he has received. It is the Post-Concussive Syndrome he claims prevents him from playingno other injury. He is not claiming any other physical limitations prevent him from his employment as a hockey player. Therefore, what is truly material is the information regarding the head injuries.
In a Motion For Summary Judgment, the burden is on the moving party to make a prima facie showing that the motion should be granted. Not until that showing is made does the burden shift to the party opposing the summary judgment to present evidence demonstrating that material factual issues remain. Hayes v. Autin, 96-287 (La.App. 3 Cir. 12/26/96), 685 So.2d 691, writ denied, 97-281 (La.3/14/97), 690 So.2d 41. In the matter before us, the appellee, the moving party in this case, has failed to make a prima facie showing that the claimant made material misrepresentations that entitle the employer to judgment as a matter of law under 23:1208. Accordingly, the judgment of the trial judge is reversed.
REVERSED.