DANIEL L. DYSART, Judge.
 

 11 Following a bench trial, John Patrick Payton was awarded $202,101.00 for damages, penalties, expert fees, costs and interest he incurred as a result of an accident in which he was involved while riding his motorcycle insured by Progressive Security Insurance Company. For the following reasons, we amend the judgment, and affirm as amended.
 

 FACTS AND PROCEDURAL HISTORY:
 

 Mr. Payton filed suit against his uninsured/underinsured carrier, Progressive Security Insurance Company (hereinafter “Progressive”), seeking damages for personal injuries and property damages. According to the original petition for damages filed herein, on February 26, 2005, John Patrick Payton (hereinafter “Mr. Payton”) was riding his motorcycle on Marengo Street in New Orleans, proceeding towards St. Charles Avenue. Suddenly, and without warning, a brown vehicle traveling on Baronne Street, approached the intersection from Mr. Payton’s left. Despite the fact that the brown vehicle had a stop sign, it appeared to Mr. Payton that its driver was not going to stop. He reacted by applying his brakes and turning 1 ¡>his front wheel, causing his brakes to lock and throwing him from his motorcycle. According to Mr. Payton, the driver of the brown vehicle apologized for causing the accident, but nonetheless fled the scene. No mention was made of contact between Mr. Payton’s motorcycle and the brown vehicle.
 

 After answering the suit, Progressive filed a motion for summary judgment arguing that the policy of insurance issued to Mr. Payton contained an exclusion precluding recovery for property damages incurred in any accident where there was no physical contact between the insured vehicle and the uninsured vehicle, unless the insured could provide proof of contact through the testimony of an independent and disinterested witness.
 

 Additionally, Progressive argued that Louisiana law, specifically La.Rev.Stat. 22:1295(l)(d)(i)
 

 [1]
 

 ,
 
 provides that when damages are allegedly sustained in a “miss and run” accident, where there is no physical contact between vehicles, a plaintiff must produce an independent and disinterested witness who can establish that a “phantom” vehicle caused the accident.
 

 Prior to a hearing on Progressive’s motion for summary judgment, Mr. Payton amended his petition to allege that there was contact between his motorcycle and
 
 *1197
 
 the brown vehicle, but that his loss of consciousness from the impact precluded him from having actual knowledge of the collision. Rather, through subsequent expert inspection and evaluation, he was able to conclude that |,.¡there was indeed contact. Thus, the accident was not a “miss and run,” but, rather, a “hit and run.”
 

 Progressive reurged its motion for summary judgment and supplemented its memorandum in support. It argued that the “expert” inspection and evaluation, which determined contact between Mr. Payton’s motorcycle and the brown vehicle, was insufficient. Progressive argued that the “expert” was not qualified to make those determinations based on his education and experience, and never physically examined the motorcycle in question. Rather, he looked at photographs of the motorcycle and testified that there was a dent on the left side of the gas tank.
 

 Progressive concluded that the testimony offered to support the necessary contact between Mr. Payton’s motorcycle and the brown vehicle to afford coverage was insufficient to create a genuine issue of material fact to defeat summary judgment. Progressive argued that its investigator, who was far better qualified to inspect the motorcycle and determine the cause of the accident, and who had physically examined the motorcycle, found no evidence that Mr. Payton’s motorcycle was damaged as a result of contact with another vehicle.
 

 Progressive’s motion for summary judgment was never heard. Instead, the parties requested that the matter be set for trial. A joint motion was filed requesting the trial court to bifurcate the issues of contact between Mr. Payton’s motorcycle and the brown vehicle, and all other issues including damages.
 

 Following both phases of trial, the trial court rendered judgment finding that Mr. Payton proved by a preponderance of the evidence that there was contact between his motorcycle and the phantom vehicle; that the phantom vehicle was at fault for the accident; and, that Progressive failed to establish that Mr. Payton was comparatively at fault. The trial court awarded Mr. Payton general damages of |4$125,000; past lost wages of $40,000; past lost income of $12,000; medical expenses of $13,755; a penalty of $5,000 for Progressive’s bad faith failure to timely pay medical coverage; a penalty of $1,000 for Progressive’s bad faith failure to timely pay collision damage; and, expert fees in the amount of $5,346. Additionally, the trial court assessed all court costs to Progressive.
 

 Mr. Payton moved for a limited new trial. He sought additional damages for loss of enjoyment of life and additional past lost wages. The trial court denied the motion after hearing.
 

 Progressive timely appealed the judgment, and Mr. Payton answered the appeal, seeking the same additional damages he requested in his motion for new trial.
 

 DISCUSSION:
 

 A. Standard of Review
 

 A court of appeal may not set aside a trial court’s findings of fact in the absence of manifest error or unless they are clearly wrong. Under this manifest error standard, in order to reverse a trial court’s determination of fact, an appellate court must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding, and (2) further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous.
 
 Allerton v. Broussard,
 
 10-2071, p. 3 (La.12/10/10), 50 So.3d 145, 146-47;
 
 Bonin v. Ferrellgas,
 
 03-3024, p. 6-7 (La.7/2/04), 877 So.2d 89, 94-95. Reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony.
 
 Allerton,
 
 
 *1198
 
 10-2071, p. 3, 50 So.3d at 147;
 
 Stobart v. State, through Dept. of Transp. And Development,
 
 617 So.2d 880, 882 (La.1993).
 

 |fiB. Discussion
 

 Progressive raises four assignments of error on appeal. First, it argues that the trial court erred in finding that the Progressive insurance policy afforded coverage for plaintiffs claims.
 

 Progressive is correct in its assertion that to recover property damages under an uninsured motorist policy, a plaintiff involved in an accident with a phantom vehicle must either prove that there was contact between the insured vehicle and the phantom vehicle, or must produce an independent, disinterested witness to corroborate the plaintiffs allegations of a miss and run accident.
 
 See
 
 La.R.S. 22:1295(1)(d)(i);
 
 Rener v. State Farm Mut. Auto. Ins. Co.,
 
 99-1703 (La.App. 3 Cir. 4/5/00), 759 So.2d 214, 217. Likewise, to recover for bodily injuries caused by an accident with a phantom, the plaintiff bears the burden of proving, through an independent and disinterested witness, that a phantom caused the accident. La.R.S. 22:1295(1)(f).
 

 Specifically, the Progressive policy issued to Mr. Payton provides, in pertinent part:
 

 PART III
 
 — UNINSURED/UNDERIN-
 
 SURED MOTORIST COVERAGE
 

 INSURING AGREEMENT — UNINSURED/UNDERINSURED
 

 MOTORIST BODILY INJURY COVERAGE
 

 INSURING/AGREEMENT — UNINSURED/UNDERINSURED
 

 MOTORIST PROPERTY DAMAGE COVERAGE
 

 Subject to the Limits of Liability, if you pay the premium for
 

 Uninsured/Underinsured Motorist Property Damage Coverage, we will pay for damages which an insured person is legally entitled to recover from the owner or operator of an uninsured motor vehicle due to property damage:
 

 1. to a covered vehicle listed on the Declarations Page as a vehicle for which Uninsured/Underinsured Motorist Property Damage is provided;
 

 2. caused by an accident, and;
 

 3. arising out of the ownership, maintenance, or use of an uninsured motor vehicle.
 

 _Ll*
 

 EXCLUSIONS — READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART III.
 

 3. Coverage under this Part III is not provided for property damage:
 

 a. If there is no physical contact between the uninsured motor vehicle and the covered vehicle, unless you or a relative can show through an independent and disinterested witness that the property damage was the result of the actions of a driver of another vehicle whose identity is unknown or who is uninsured or underinsured.
 

 Progressive argues that Mr. Pay-ton was not able to produce an independent and disinterested witness; therefore, his claims for coverage should have been denied in accordance with the terms of the Progressive policy. However, Progressive is ignoring two important factors when making its argument: 1) Mr. Payton amended his petition to categorize the accident as a “hit and run,” rather than a “miss and run,” and, 2) he produced an expert who testified that the dynamics of the accident indicated contact between Mr. Payton’s motorcycle and another vehicle.
 

 Although the trial court stated on the record that it found the expert testimony
 
 *1199
 
 to be incomplete and less than helpful, it did find Mr. Payton’s testimony to be credible. The trial court also stated that the existence of glass on the scene that did not belong to Mr. Payton’s motorcycle led to the reasonable conclusion that the glass was from a broken light on the phantom vehicle.
 

 These statements by the trial court and Progressive’s argument that its expert was better than the plaintiffs expert trigger an important rule of review. It is well settled that where the testimony of experts differ, the trier of fact has great, even vast, discretion in determining the credibility of the evidence, and a finding of fact in this regard will not be overturned unless clearly wrong. In this case, the trial [ 7court indicated that it did not rely on the testimony of either expert, but rather relied on the testimony of plaintiff and the fact that there was glass in the street that did not belong to plaintiffs motorcycle. Nonetheless, the expert testimony is in the record, and in our mandated review of the record in its entirety, we find that plaintiffs expert, William Haight, rendered the most plausible opinion on how the accident occurred.
 

 Mr. Haight testified that based on the information he had, Mr. Payton’s motorcycle had to have hit something in the roadway, and that “something” was more than likely another vehicle.
 

 Additionally, we note the stipulated testimony of Nicholas Clancy contained in the record. Mr. Clancy testified that he was doing carpentry work in a home near the intersection of Marengo and Baronne streets on the day of the accident. At approximately 11 a.m., he heard a loud noise, which he described as sounding as if a moving vehicle struck a parked car or a car door that was slammed incredibly hard. Mr. Clancy noted that his truck was the only other vehicle anywhere near the intersection.
 

 When Mr. Haight’s opinion testimony and Mr. Clancy’s testimony is combined with the trial court’s factual findings and determination of credibility, this Court cannot say that the trial court was manifestly erroneous in its finding that contact was made between Mr. Payton’s motorcycle and another vehicle.
 

 Accordingly, we find no error in the trial court’s conclusion that the Progressive policy afforded coverage for the subject accident.
 

 Progressive’s second assignment of error is that the trial court erred in awarding Mr. Payton damages for past lost rental income. Specifically, Mr. |8Payton alleged that he lost rental income of $12,000 as a result of the accident and his injuries.
 

 Mr. Payton and his wife owned property through a limited liability company, PSA Development L.L.C. The property was being renovated into luxury apartments at the time of the accident, and was within two months of completion. Mr. Payton testified that he worked as a supervisor on the project, monitoring the work progress and procuring fixtures. Because of the accident, he was not able to supervise the work and the completion of the project was delayed by four months. The only evidence that the apartments would have been rented was Mr. Payton’s testimony that a realtor told him he had tenants lined up to rent on the original completion date.
 

 The trial court awarded Mr. Payton $12,000 for lost profits as a result of the delay in renting the property. We find this to be error.
 

 Our review of the record indicates that the only evidence of Mr. Payton’s loss is hearsay testimony offered by Mr. Pay-ton, that the units would have been rented on April 1, 2005. Mr. Payton has failed to carry his burden of proof, as the record
 
 *1200
 
 before us contains insufficient evidence to prove that he lost income on the apartments.
 

 Additionally, we agree with Progressive that Mr. Payton was not the proper party to seek loss of profits for the rental property as he and his wife had formed a limited liability company, which in fact, owned the property. Contrary to the statements in Mr. Payton’s brief that “he labored [at the property]” and that his ownership of the property was more than a passive investment, the law is clear that he cannot recover individually for lost profits.
 
 See Amador v. Reggie,
 
 05-976 (La.App. 3 Cir. 3/1/06), 924 So.2d 415, 418;
 
 Hinchman v. Oubre,
 
 445 So.2d 1313, 1317 (La.App. 5 Cir.1984).
 

 Accordingly, we amend the judgment to delete the $12,000 awarded for loss of profits on the rental property.
 

 The third assignment of error made by Progressive is that the trial court erred in awarding Mr. Payton bad faith penalties.
 

 To recover penalties pursuant to Louisiana Revised Statutes 22:1892
 
 [2]
 
 and 22:1220, a plaintiff has the burden of proving bad faith. To do so, he must prove: 1) the insurer received a satisfactory proof of loss; 2) the insurer failed to pay the claim within the applicable statutory period; 3) the insurer’s failure to pay was arbitrary and capricious.
 
 Boudreaux v. State Farm Mutual Automobile Ins. Co.,
 
 04-1339, p. 4 (La.App. 4 Cir. 2/2/05), 896 So.2d 230, 233.
 

 McDill v. Utica Mutual Ins. Co.,
 
 475 So.2d 1085, 1089 (La.1985), is the seminal case on defining what constitutes satisfactory proof in the context of an uninsured motorist coverage claim. The Court held that to establish that an insurer received a satisfactory proof of loss in such a claim “the insured must show that the insurer received sufficient facts which fully apprise the insurer that (1) the owner or operator of the other vehicle involved in the accident was uninsured or underinsured; (2) that he was at fault; (3) that such fault gave rise to the damages; and (4) establish the extent of those damages.”
 

 Progressive contends and the record supports that a letter was sent to Mr. Payton on March 10, 2005. Enclosed with the letter was a medical authorization | inform, which Progressive requested Mr. Payton sign and return, with a list of his treating physicians. According to Progressive, Mr. Payton informed the adjuster that he had copies of his bills, but that he never provided them to Progressive. It was not until July of 2005, that a second adjuster received the bills and sent Mr. Payton a check for $4,656.40.
 

 Mr. Payton’s attorney attempted to enter into the record a transcript of a recorded statement between Mr. Payton and the first Progressive adjuster, but the trial court only allowed it to be proffered because it was not listed on plaintiffs exhibit list.
 
 [3]
 

 
 *1201
 
 Mr. Payton testified on cross-examination that he had copies of his bills and that he told Progressive that if it wanted them, he was willing to provide them. Mr. Pay-ton was specifically asked:
 

 Mr. Giordano: Mr. Payton, do you have any proof or any evidence whatsoever at the trial of this matter that Progressive had in its possession any medical bills more than 30 days before they sent you this check of July 13th, 2005:
 

 Mr. Payton: I offered to give them the bills much, much earlier. Now, if they didn’t want to get the bills at that time or chose to make it easier on them and not pay me at that time, as you can see in my email to them on May 4th of '05,1 sent an email to Mr. Montgomery saying: • ‘It’s been over two months since the accident and I still don’t have any word on the status of my claim. In the meantime, my bills associated with my injuries continue to mount and the motorcycle hasn’t been repaired. I’ve been patient and cooperative through the entire process, h,but I think enough time has elapsed for you to investigate this accident. Please let me know how you wish to proceed so I can take appropriate action if necessary.’ So we already had several conversations prior to that where they should have had all the bills and I was willing to provide them with the bills.
 

 Mr. Giordano: But “should have” and “could have” is two totally different things when it comes to obtaining legal bills....
 

 Mr. Payton: I was very willing to provide them^-
 

 [[Image here]]
 

 Mr. Giordano: But, Mr. Payton, as I understand your testimony, I think it’s clear, you didn’t provide them — you had them and you were willing to provide them but you hadn’t provided them to Progressive; is that correct? Mr. Pay-ton: I offered to provide them with bills.
 

 This testimony indicates that Mr. Pay-ton had bills he could have sent to Progressive, but did not. The record is also unclear as to exactly when Progressive received the release, however, a letter from the second adjuster to Mr. Payton in July of 2005 states that he had finally received the bills from Ochsner and was enclosing a check. Thus, it can be inferred from the record that at some point between March 10, 2005 and July 13, 2005, Mr. Payton returned the release form and Progressive obtained copies of medical bills.
 

 The trial court stated in reasons for making the penalty award that by March 10, 2005, Progressive had the information necessary to make the medical payments claim. The record does not support this finding.
 

 A satisfactory proof of loss is a necessary predicate to a showing that the insurer was arbitrary and capricious.
 
 Boudreaux,
 
 04-1339 at p. 4, 896 So.2d 230, 234,
 
 citing Reed v. State Farm Mutual Automobile Ins. Co.,
 
 03-0107, p. 13 (La.10/21/03), 857 So.2d 1012, 1021. The insurer’s receipt of satisfactory proof of loss is what triggers the running of the applicable statutory time limits. The Louisiana Supreme Court noted in
 
 Reed, supra,
 
 “[i]t logically follows from this burden [of establishing 11ga satisfactory proof of loss] that a plaintiff who possesses information that would suffice as satisfactory proof of loss, but does not relay that information to the insurer is not entitled to a finding that the insurer was arbitrary or capricious.”
 
 Reed,
 
 03-0107 at p. 13, 857 So.2d at 1020-21. It also logically follows that when “there is a reasonable and legiti
 
 *1202
 
 mate question as to the extent and causation of a claim, bad faith should not be inferred from an insurer’s failure to pay within the statutory time limits.”
 
 Reed,
 
 03-0107 at p. 13, 857 So.2d at 1021.
 

 Thus, after reviewing the record in its entirety, we find the trial court was manifestly erroneous in finding that Progressive was arbitrary and capricious in not paying Mr. Payton’s medical bills until July 13, 2005.
 

 In its last assignment of error, Progressive argues that the trial court erred in awarding Mr. Payton penalties for not timely tendering payment for property damage.
 

 Progressive sent Mr. Payton a check dated May 4, 2005, in the amount of $1,252.16 for collision damages to his motorcycle. In its brief, Progressive explains that it informed Mr. Payton his property damage claim would have to be investigated because of the policy exclusion for a miss and run without an independent witness.
 

 It is unclear from the record exactly when Progressive became aware of the damage to Mr. Payton’s motorcycle, and had an opportunity to view and assess the damages. However, we do know that Progressive’s adjuster went to the Harley Davidson shop long before the May 4, 2005, date that the check for $1,252.16 was tendered. Accordingly, we cannot say that the trial court erred in awarding penalties for failure to timely tender property damage payments.
 

 11RLastly, Mr. Payton answered this appeal seeking to increase his award for past lost wages. He argues that the trial court relied on the wrong information to arrive at its award of $40,000.
 

 The trial court explained that it is difficult to calculate lost wages for a person who does not work for an hourly wage. The court was cognizant of the complicating factors of Hurricane Katrina and new contracts entered into by plaintiff after Katrina. The court also clearly understood that it was plaintiffs burden to prove the lost wages. Considering all the variables, the trial court arrived at the lost wage figure of $40,000.
 

 After a thorough review of the record, we conclude that the trial court was not manifestly erroneous in its award. Accordingly, we deny the relief sought by Mr. Payton on this issue.
 

 C. Conclusion:
 

 According, for the reasons set forth above, we amend the judgment to delete the award for lost profits of $12,000, and the award of penalties for failure to timely pay medical benefits ($5,000). In all other respects, the judgment of the trial court is affirmed.
 

 AFFIRMED, AS AMENDED
 

 ARMSTRONG, C.J., concurs in the result.
 

 [1]
 

 . La. R.S. 22:680, in effect at the time of this incident, was renumbered as La. R.S. 22:1295, by Acts. 2008, No. 415, § 1, effective January 1, 2009. The current numbering is used herein.
 

 [2]
 

 . Acts 2008, No. 415, § 1, amended and reenacted Title 22 of the Louisiana Revised Statutes of 1950, the Louisiana Insurance Code, and directed the Louisiana State Law Institute to redesignate the provisions of Title 22. La.Rev.Stat. 22:1892 was formerly La.Rev. Stat. 22:658, and La.Rev.Stat. 22:1973 was formerly La.Rev.Stat. 22: 1220, at the time of this accident.
 

 [3]
 

 . This Court has reviewed the proffer. One of the first things stated by the Progressive adjuster is that he sent Mr. Payton a release form that day (March 10, 2005), and “if you want to fill that out that give me [sic] I can call Ochsner and say hey Mr. Payton was in there and I need to get the bills....” Mr. Payton then asks if he will be reimbursed directly or if his health insurance carrier will be reimbursed. The adjuster replied that he would have to see the bills to see how they were paid, to which Mr. Payton replied, "Ok.” Later in the conversation, the adjuster states to Mr. Payton, "Med pay is no problem either. I got bills from Ochsner totaling $5,000. We are cutting a check for that as
 
 *1201
 
 well.” Thus the statement is internally inconsistent.