362 So.2d 1182 (1978)
John E. KIRSCH, Jr.
v.
PIER ORLEANS, INC. and Gourmet Food Services, Inc.
No. 8387.
Court of Appeal of Louisiana, Fourth Circuit.
September 12, 1978.
*1183 Michael H. Bagot and John H. Gniady, New Orleans, for plaintiff-appellee.
Normann & Normann, Charles E. Leche, New Orleans, for defendants-appellants.
Before SAMUEL, LEMMON and BEER, JJ.
LEMMON, Judge.
Pier Orleans, Inc., a Louisiana corporation, has appealed from a judgment ordering the issuance of 10% of its authorized stock to plaintiff. Issues on appeal are (1) whether evidence of the agreement to issue stock to plaintiff was properly admissible and (2) whether the person who executed *1184 the agreement on behalf of the corporation was authorized to do so.
Pier Orleans was incorporated on May 7, 1973. The charter listed Thomas Blankenship as the sole incorporator, and the initial report of the same date listed him as agent for service of process, but listed no directors or officers.
Prior to the date of incorporation Blankenship, Lionel Flotte and Russell Cornelius had been interested in obtaining a lease of plaintiff's permit for a location on the shore of Lake Pontchartrain for the purpose of constructing and operating a restaurant. When preliminary negotiations, primarily between Blankenship and plaintiff, reached a point where the parties were near an agreement in principle, plaintiff turned over the negotiations to his attorney. At that point discussions about consideration for the lessee included payment of a sum of about $15,000.00 upon execution and rental payments of $1,000.00 per month, plus 10% of the stock in the corporation to be formed and the promise of a job in the restaurant. Blankenship, Flotte and plaintiff's attorney testified that when a proposed draft of the lease was being discussed during one of the final negotiating sessions, Cornelius, who controlled the financing but attended few of the negotiating sessions, was called by telephone and agreed to the above terms, but insisted that the promise to issue stock and to provide employment not be included in the written lease. According to their testimony Cornelius was concerned about the possible effect of those terms upon the validity of the lease, since plaintiff's permit rights were then in litigation.
After the corporation was chartered on May 7 Blankenship, Flotte, Cornelius, plaintiff and plaintiff's attorney met on May 11 and worked out the details of the final lease, omitting (in accordance with Cornelius' previous instructions) the provisions about the corporate stock and the job. A corporate bank account was opened, and on May 15 Blankenship and Flotte, who were apparently the signatories on the corporate bank account, executed a check in the amount of $16,500.00 to plaintiff.
On May 17, plaintiff, concerned about not having written evidence of the stock agreement, contacted Flotte, who executed an agreement to issue 10% of the stock as "prepaid for services rendered in connection with the lease", after talking to Blankenship, who agreed there was no reason not to put in writing their promise to issue the stock to plaintiff. Flotte signed the agreement in his capacity as vice-president of the corporation.
On May 18 the lease was executed, and Blankenship signed the contract as president. At that time no formal meeting of the corporation had ever been held, and no board of directors had ever been elected.[1]
On appeal, as it did in the trial court, defendant contends that evidence of prior negotiations and agreements leading up to a written agreement are inadmissible to vary the terms of the agreement. This contention is indeed a correct general statement of law regarding parol evidence, but applies only when the parties have stated the terms of their contract in the form of a complete written integration.
The parol evidence rule simply excludes as irrelevant any prior negotiations or agreements when the parties intend to integrate these into one writing. The parol evidence rule does not make these facts irrelevant; the new agreement in writing makes these facts irrelevant, but only if the written agreement is a complete and accurate statement of all of the terms agreed upon by the parties.
Here, the evidence was introduced, not to show prior negotiations, but to show that the written lease was not the *1185 complete agreement between the parties. Parol evidence is admissible to show that the parties did not intend to substitute one written contract for all of their prior negotiations and agreements and that the written agreement was not assented to as a complete integration. Burton v. Lumbermens Mut. Cas. Co., 152 So.2d 235 (La.App. 4th Cir. 1963), cert. den. 244 La. 895, 154 So.2d 767. Evidence is certainly admissible to show the circumstances under which the agreement was made and the purpose for which the written contract was executed. 3 Corbin, Contracts § 582 (1960); 9 Wigmore, Evidence § 2430 (3d ed. 1940); 25 La.L.Rev. 320-321 (1965); 30 Am.Jur. 2d, Evidence § 1043 (1967); Hirsh v. Miller, 167 So.2d 539 (La.App. 4th Cir. 1964), cert. den. 246 La. 909, 168 So.2d 821.
By showing that the parties did not intend the lease to be the complete contract and that they contemporaneously executed two separate agreements relative to consideration for the lease, plaintiff used the agreement to transfer stock to show what the entire bargain really was and thereby supplemented, rather than contradicted, the terms of the written lease.[2]
Credible evidence by every party interested in the lease, except Cornelius, established that the lease contract was not intended to be the complete agreement and that the agreement to transfer the stock was one of the inducements for plaintiff to execute the lease, but was prepared to comply with Cornelius' desire to omit that term from the written lease and to keep separate the promise to transfer stock. While Cornelius emphatically denied this testimony, the trial judge resolved this factual issue against him, and the record reveals no manifest error in this resolution or in the determination that both writings reflected the final and complete agreement between the parties.
Defendant also contends that Flotte was merely a promoter and was never an officer of the corporation and that his execution of the agreement to transfer stock was neither authorized nor ratified by the corporation.
This contention also turns on the factual evidence surrounding Flotte's execution of the agreement. Blankenship testified that everything relative to formation of the corporation was done informally around the time of execution of the lease and that although officers were not formally elected until four months later, Flotte had been listed as vice-president when the bank account was opened. Flotte testified that he thought he was vice-president and that Blankenship (the sole incorporator and subsequently the first president) authorized execution of the agreement as evidence of the promise to transfer stock, a promise of which Cornelius was aware and had agreed to as part of the complete bargain. Other evidence showed that Flotte and Blankenship had conducted most of the lease negotiations on behalf of the corporation, had handled the formation of the corporation, had personally endorsed a substantial corporate obligation, and at the time of trial were shareholders of the parent corporation. Finally, Blankenship testified that Cornelius did not object to issuing plaintiff 10% of the stock until early 1976, and Flotte testified that Cornelius first tried to reduce plaintiff's interest to 5%.
Cornelius, on the other hand, insisted that he represented the primary investor and that Blankenship and Flotte acted without his knowledge or authority in agreeing to transfer the stock.
Authority to bind a corporation is generally conferred by resolution of the board of directors. At the time of the lease and the agreement to transfer stock, directors had *1186 not been elected. However, Blankenship (who executed the lease as president) and Flotte had been held out to have apparent authority to act on behalf of the corporation, and plaintiff relied on this apparent authority in contracting with these parties. Therefore, as to these agreements with plaintiff, the corporation was bound by the actions of Blankenship and Flotte.
The judgment is affirmed.
AFFIRMED.
NOTES
[1] The first recorded minutes was a September 6, 1973 meeting of shareholders and directors, at which Blankenship, Cornelius and a third person were named directors, and Blankenship and Cornelius were elected president and secretary-treasurer respectively.

Although the minutes indicated that Gourmet Food Service, Inc. (with the same directors) owned the "entire capital stock to date", no stock certificates were issued until March, 1975, when 900 of the 1,000 authorized shares were issued to Gourmet Food.
[2] This case does not present the problem of using an inferior form of evidence (verbal) to overcome superior evidence (written) which is a primary purpose of the prohibition expressed in C.C. art. 2276; this case involves two contemporaneous written agreements, and testimonial proof is admissible to show that the parties did not intend the written lease to be a final and complete integration of their antecedent negotiations. Indeed, the formal contract of sale or lease frequently represents only a partial integration of the complete terms of the agreement. 3 Corbin, Contracts § 587 (1960).