KLEES, Judge.
This is an appeal from a judgment finding the uninsured motorist carrier for Budget Rent-A-Car liable for the plaintiffs’ personal injuries sustained when their rented automobile was rear-ended by a pickup truck that fled from the scene after the collision. The occupants of the rented vehicle, Marvis Goodall Carriere, Hedrick Bick-man, Mark Wiltz, and Freddie Winfield, consolidated their personal injury suits against Budget’s uninsured motorist carrier, David Porter, who is the alleged owner of the hit-and-run vehicle, and State Farm Mutual Automobile Insurance Company, David Porter’s liability insurer.
Prior to trial, the parties stipulated the damages of the four plaintiffs. After trial, the judge held that Budget’s uninsured motorist carrier was accountable to the plaintiffs, and dismissed David Porter and State Farm from the suit. On appeal, Budget seeks a reversal asserting that the pickup truck was identified as belonging to David Porter, and therefore, David Porter’s insurer, rather than Budget’s, should be liable. After reviewing the record, we find that Budget met their legal burden of proof in establishing the identity of the hit-and-run vehicle, and accordingly, we reverse the trial judge’s determination of liability.
On January 5, 1989, Marvis Goodall and three passengers, Hedrick Bickman, Mark Wiltz, and Freddie Winfield were traveling east on Chef Menteur Highway in a white 1988 Sable that was rented from Budget. At approximately 6:15 p.m., plaintiffs were stopped at the traffic signal at the Down-man Road intersection when they were rear-ended by a pickup truck. Although the plaintiffs were not called at trial, the parties stipulated that they would identify the vehicle that hit them as a dark colored pickup truck driven by a young black male.
Budget introduced the deposition of Damien Peters, who witnessed the accident from an adjacent lane of traffic. Peters testified that he witnessed a dark colored pickup truck strike the plaintiffs’ vehicle, reverse, and then proceed into the center lane through the green light. When Peters realized that the driver was not going to stop, he followed the pickup truck going east on Chef Menteur Highway. After traveling six to ten blocks, the pickup truck pulled over and parked on the side of the highway. Peters also pulled over and parked behind the pickup truck. While parked, Peters recorded the truck’s license plate number number on a notepad and then reverified it. In the meantime, the driver got out of the truck, walked around it, and then approached Peters’ van. After exchanging words, Peters recommended that the driver return to the scene of the accident. Peters admitted that he would be unable to identify the driver at the present time, but describes him as a young black male with a large build, wearing gold chains. Peters, who is an owner of an automobile parts store, estimated that the pickup truck was a late 1970s or early 1980s Ford. Peters returned to the accident and gave the license plate number and his name to' one of the plaintiffs. The *892 license number was traced to a blue 1977 Ford pickup truck registered to David Porter.
In order to rebut Budget’s assertion that Porter’s pickup truck was the hit-and-run vehicle, Porter and State Farm attempted to show that (1) the pickup did not have body damage consistent with the alleged accident, (2) Porter’s pickup truck was inoperable at the time of the accident, (3) Porter was waiting for a co-worker to get off of work at the time of the accident, and (4) Damien Peters mistakenly recorded the wrong license number.
The record reflects that the case was turned over to the Hit and Run Office for follow up investigation. On February 13, 1989, David Porter reported to the Hit and Run Office with the pickup truck claiming that he knew nothing about an accident occurring on January 5, 1989. The officer assigned to the case, Officer Gwen Guggenheim, inspected the pickup truck twice, but did not find damage consistent with the type of collision described in the original police report. Since no damage was found, Guggenheim issued a supplemental report determining the case “cleared by inspection.” However, while this inspection revealed no damage, it occurred over a month after the January 5, 1989 accident.
Porter testified that at the time of the accident, his pickup had been inoperable for four to five months, and that it was parked in front of his home. In order to comply with the citation from the Hit and Run Office, Porter claimed that the pickup had to be repaired. The repairs were allegedly made by “Jim,” a former co-worker and mechanic, who went to Porter’s home to install a timing chain. However, Porter does not have a receipt for the repair work or the parts, nor does he know Jim’s last name or current whereabouts. Julie Roberts, another one of Porter’s co-workers, also testified that Porter’s truck had been inoperable and that it was fixed by “Jim.” However, Roberts, like Porter, was unaware of Jim's last name or whereabouts.
Additionally, Porter claims that he could not have been in an accident at 6:15 on January 5, 1989, because he was waiting for Julie Roberts to get off of work at 8:30. Porter and Roberts worked for a company called “Airport Rhodes,” an airport shuttle service, located on Martin Luther King Drive. Because the two of them lived near one another in New Orleans East, Porter would take Roberts to and from work in his 1982 Oldsmobile.
Porter and Roberts testified that on the day of the accident, Porter got off of work at approximately 5:30, and waited until 8:30 at a nearby lounge for Roberts to get off of work. They further testified that their route from work was to take Claiborne to Interstate 10 East and exit at Chef Ment-eur Highway, which is east of the accident site. After trial, Budget moved for a new trial based on impeachment evidence consisting of an affidavit establishing that Porter could not have been waiting for Roberts because Roberts did not report to work during the week of January 5, 1989. The trial court correctly denied this motion because with due diligence this information should have been discovered before trial. However, even when this impeachment evidence is not considered, the factual findings of the trial court are not warranted.
The first premise of appellate review is that factual findings and conclusions of the trial court must be accorded great weight and must not be disturbed in the absence of manifest error. Canter v. Koehring Company, 283 So.2d 716 (La.1973). In Dyson v. Gulf Modular Corp., 338 So.2d 1385 (La.1976), the Supreme Court stated:
An appellate court is simply not free to substitute its own version of the facts, however reasonable it may be, for that found by the trial court, unless the lower court committed manifest error by finding facts not reasonably supported by credible evidence in the record.
In the oral reasons for judgment, the trial court stated:
“... The Court dismisses the lawsuit against Porter. It cannot rule that he was there [at the scene of the accident]. In order for me to come to that conclusion the Court would have to conclude *893 that he and his witness are fibbing or misrepresenting their statements. To the best of my ability the Court hereby dismisses the suit against Porter and holds the uninsured motorist of Budget Rent-A-Car responsible.”
Our review of the record in this case leads us to the opinion that material facts as found by the trial judge are not reasonably supported by credible evidence. The trial court credits the testimony of David Porter and Julie Roberts; however, the testimony of an independent eyewitness who followed the fleeing vehicle and wrote down the license number cannot be ignored. Even though Damien Peters’ testimony does not establish the identity of the driver, it clearly establishes that David Porter’s pickup was the hit-and-run vehicle. In its analysis, the trial court erroneously attributed greater weight to the testimonies of David Porter and Julie Roberts than the testimony of Damien Peters, a disinterested party. The testimony of the disinterested witnesses, if credible, should be given greater weight by the trial court than that of an interested witness. See Mitchell v. Sigrest, 345 So.2d 141 (La.App. 1st Cir.1977), and Alexander v. St. Paul Fire & Marine Ins. Co., 312 So.2d 139 (La.App. 1st Cir.1975), writ denied, 313 So.2d 846 (La.1975).
We conclude that Budget proved by a preponderance of the evidence the identity of the truck and that the truck was insured. When considering the purpose of uninsured motorist and hit-and-run provisions, it is apparent that these provisions would not apply where, although identity of the driver of the other vehicle was not known, the owner of that vehicle is known. See Cochran v. Riggins Heavy Hauling, 516 So.2d 1303 (La.App. 2d Cir.1987). Specifically, the Cochran Court stated:
In asserting his uninsured claim against State Farm, plaintiff seemingly alleges that the hit-and-run provision applies because the driver of the truck is unknown. The implication is that it does not matter that the owner is known. The hit-and-run provision should be interpreted in such a manner as to be consistent with the rationale for it. Thus the provision should be read to require that both the owner and operator be unknown — because if one of them is known, then the vehicle is not a hit-and-run vehicle and the hit-and-run provision does not apply. (Citations omitted)
Cochran, supra at 1305.
Because we find that Budget proved the identity of the pickup truck and that it was insured, Budget’s uninsured motorist carrier should not be held liable to the plaintiffs. Accordingly, we reverse the trial court’s findings and hold State Farm liable for the plaintiffs personal injuries. Furthermore, we find that State Farm is liable to Budget for property damage caused by the accident in the amount of $8,105.09.
REVERSED AND RENDERED.