SANDRA CABRINA JENKINS, Judge.
| iThis is an appeal of a jury award of $343,004.81 in favor of Appellee Armond Duvio, Jr. and against Appellants Specialty Pools Co., L.L.C. (“Specialty Pools”) and its insurer Scottsdale Insurance Company (“Scottsdale”), in solido. The jury also awarded Mr. Duvio $48,000.00 in liquidated damages against Specialty Pools. The jury verdict arises out of defects in a swimming pool designed and constructed by Specialty Pools at Mr. Duvio’s home in St. Bernard Parish. Specialty Pools and Scottsdale appeal the trial court judgments denying their pre-trial motions for partial summary judgment and exceptions of per-emption on Mr. Duvio’s construction deféct claims, and Appellants’ post-trial motions on the applicability of certain policy exclusions. Appellants also challenge a specific jury instruction and interrogatory regarding the cause of the damage to the pool, as well as the jury’s finding on the issue of causation. For the reasons discussed below, we affirm in all respects the trial court’s final judgment rendered in accordance with the jury’s verdict.
I .BACKGROUND FACTS AND PROCEDURAL HISTORY
The Contract.
On December 20, 2007, Mr. Duvio signed a written proposal/agreement (the “Contract”) with Specialty Pools for the construction of a custom swimming pool at Mr. Duvio’s home in St. Bernard Parish. Specialty Pools agreed to provide all equipment, materials, and labor to install the pool in accordance with Specialty Pools’ plans and specifications, with an original contract price of $183,694.000.[1] The Contract’s specifications for the pilings under the pool state: “By Owner, Additional $50.00 per piling upon approved layout by Owner.” In the Contract, Specialty Pools “guaranteed the workmanship to be free from defects for a period of one year from the date of acceptance.”
In a separate Proposal/Agreement signed on December 20, 2007 (the “Piling Contract”), Specialty Pools agreed to provide all equipment, materials, and labor to install 45 40-foot pilings under the pool, with the notation “[ojwner to approve layout.” On February 7, 2008, Mr. Duvio signed a change order in which Specialty Pools agreed to provide all equipment, materials, and labor to install those additional pilings pursuant to “plans and specifications.”
Notice of Default of Contract.
On April 21, 2008, Mr. Duvio sent Specialty Pools a “Default of Contract” notice stating that Specialty Pools was “long past [the] completion date” given that “[t]he contract was signed on December 7, 2007 with 4 months to completion on April 10, 2008.” Mr. Duvio stated in the notice that “[a]s we are not charging liquidated damages up to now, we will give you to May 10, 2008. After this date Ryou will be charged $500.00 a day for liquidated damages as per our verbal agreement on and before signing of the contract.”
On February 9, 2009, counsel for Mr. Duvio sent a letter to Specialty Pools listing the outstanding issues that had yet to be resolved. One of the issues was liquidated damages:
Liquidated Damages. There is an issue related to liquidated damages as a result of Specialty Pools not competing installation until July 1, 2008. Pursuant to the contract, the pool was to be completed by April 10, 2008. As a result, there are 81 days of liquidated damages at $500 per day to be addressed.
*1005 On February 13, 2009, Merlin DeCorte, Vice-President of Specialty Pools, sent an e-mail to his attorney, which was forwarded to Mr. Duvio. Mr. DeCorte’s e-mail states the following regarding the issue of liquidated damages:
Item # 6—Liquidated Damages
Specialty Pools Company disagrees completely with this allegation. As per our contract agreement, Specialty Pools would get paid upon the completion of each schedule of value. In addition, Mr. Duvio agreed to pay us 5 days after each submittal. This was a change to our original agreement by Mr. Duvio to reflect his needs to the contract in the event he had to hire another company to complete his pool.
Original Petition.
On March 27, 2009, Mr. Duvio filed suit against Specialty Pools and “ABC Insurance Company.” The original Petition asserted causes of action for redhibition, negligence, and breach of contract. In general, the Petition alleges that Specialty Pools breached its duty to Mr. Duvio to construct the pool in a proper and/or work-' manlike manner, and free from defects.
The Petition alleged eight “non-exclusive” acts of negligence by Specialty Pools: (1) failure to install the pool at the proper height; (2) failure to properly grade the pool deck; (3) failure to properly install the deck drain system; (4) failure to install non-slip strips at the top of the pool’s waterfall; (5) failure to properly | ¿install the automatic pool cleaning system; (6) failure to properly install the pavers and related foundation; (7) failure to properly install all fire columns; and (8) such other ways as identified through discovery and/or at trial.
The breach of contract claim alleged that Specialty Pools agreed to deliver the completed pool by April 20, 2008[2], but did not deliver the pool until July 3, 2008, “albeit incomplete.” The Petition sought damages for, inter alia: (1) failure to complete the pool by April 20, 2008; (2) breach of the guarantee that the workmanship was free from defects for a period of one year from the date of acceptance of the pool; (3) improper functioning of the pool cleaning system and fire columns; (4) leaks in the deck drain system; (5) overflow of rain water into the deck drain system as opposed to the grass as specified; (6) slippery steps at the top of the waterfall; and (7) subsidence of the pav-ers. The original Petition also sought liquidated damages of $500.00 per day anjl reimbursement of the cost of investigating and repairing the defects.
First Amended Petition.
On April 17, 2009, Mr. Duvio filed a First Amended Petition, which substituted Scottsdale, Specialty Pools’ commercial general liability (“CGL”) insurer, as a direct action defendant. The First Amended Petition asserted a new claim for coverage under the policy, but mostly reiterated the allegations in the original Petition.
Second Amended Petition.
On August 17, 2014, Mr. Duvio filed a Second Amended and Supplemental Petition (“Second Amended Petition”) in which he asserted that, since the delivery Lof the pool in July 2008, Mr. Duvio had discovered, among other defects, severe cracking and leaks in and around the pool, which allegedly resulted from differential settling. Mr. Duvio asserted three theories of recovery: (1) breach of statutory warranty under La. Civ.Code art. *1006 2762; (2) negligence in failing to properly design and install the pilings under the pool; and (3) breach of the guarantee of workmanship which resulted in the differential settlement of the pool. Mr. Duvio also asserted a claim for breach of contract arising from Specialty Pools’ alleged breach of its oral agreement to complete and deliver the pool by April 20, 2008, and to pay Mr. Duvio $500.00 per day in liquidated damages until completion.
Motions for Partial Summary Judgment/Exceptions of Peremption.
On July 16, 2014, Specialty Pools filed a Motion for Partial Summary Judgment which sought, inter alia, a judgment finding that Mr. Duvio was not entitled to liquidated damages based on the alleged failure to timely complete the pool. On September 3, 2014, the trial court denied Specialty Pools’ Motion for Partial Summary Judgment, finding that there was a genuine issue of material fact as to whether there was an oral agreement between the parties setting forth a completion date for the pool on April 8, 2008, and providing for the imposition of liquidated damages of $500.00 per day until completion.
In early September 2014, both Specialty Pools and Scottsdale filed Exceptions of Peremption, asserting that Mr. Duvio’s claim for differential settlement was time-barred because he did not assert it within the five-year peremptive period for bringing claims for defective construction set forth in La. R.S. 9:2772. On September 30, 2014, the trial court denied the Exceptions of Peremption without reasons.
| ¡¡On September 2, 2014, Scottsdale filed a Motion for Partial Summary Judgment on the grounds that any property damage caused by differential settlement was excluded by the CGL policy’s earth movement and professional liability exclusions. On October 7, 2014, the trial court denied Scottsdale’s motion, ruling that genuine issues of material fact were in dispute.
Jury Trial/Motions for Directed Verdict.
A jury trial was held between October 7 and October 9, 2014. At the end of Mr. Duvio’s case-in-chief, Specialty Pools moved for a directed verdict on Mr. Du-vio’s claim for liquidated damages, which the trial court denied. Mr. Duvio moved for a directed verdict on the issue of liquidated damages, which the trial court granted.
After the jury reached its verdict, the trial court entered a final judgment in favor of Mr. Duvio. Specialty Pools and Scottsdale were both cast in judgment, in solido, in the amount of $343,004.81. Specialty Pools was also cast in judgment in the additional amount of $48,000.00 in liquidated damages.
Post-Verdict Motions.
On November 13, 2014, Scottsdale filed a Motion for Judgment Notwithstanding the Verdict and, alternatively, a Motion for New trial, on the issue of the applicability of the CGL policy’s earth movement exclusion. On that date, Scottsdale also filed a Motion for New Trial on the applicability of the policy’s professional liability exclusion. On February 3, 2015, the trial court denied Scottsdale’s Motion for Judgment Notwithstanding the Verdict and Motion for New Trial on the issue of the earth movement exclusion. The trial court also denied Scottsdale’s Motion for New Trial on the issue of the professional liability exclusion.

JjASSIGNMENTS OF ERROR

Specialty Pools’ Assignments of Error.
Specialty Pools raises three assignments of error: (1) the trial court erred in denying its Motion for Partial Summary Judgment on the issue of liquidated damages; (2) the trial court erred in denying its Motion for Directed Verdict on the issue of *1007 liquidated damages; and (3) the trial court erred in denying its Exception of Peremption on the issue of differential settlement.
Scottsdale’s Assignments of Error.
Scottsdale raises six assignments of error: (1) the trial court erred in denying Scottsdale’s Exception of Peremption on the issue of differential settlement; (2) the trial court erred in denying Scottsdale’s Motion for Summary Judgment, Motion for Directed Verdict, and Motion for Judgment Notwithstanding the Verdict on the earth movement exclusion of its policy; (3) the trial court erred in refusing to adopt Scottsdale’s proffered jury instruction and interrogatory on the earth movement exclusion; (4) the jury’s finding that the earth movement was not a cause of the damage was erroneous and against the great weight of the evidence; (5) the trial court erred in denying Scottsdale’s Motion for Summary Judgment, Motion for Directed Verdict, and Motion for New Trial on the professional liability exclusion of its policy; and (6) the trial court erred in granting Mr. Duvio’s Motion for Directed Verdict on the professional liability exclusion.
Specialty Pools’ Assignment of Error Nos. 1 and 2: The Trial Court Erred in Denying its Motion for Partial Summary Judgment and Motion for Directed Verdict on the Issue of Liquidated Damages.
The trial court denied Specialty Pools’ Motion for Partial Summary Judgment on Mr. Duvio’s claim for liquidated damages. The trial court found that Mr. Duvio’s testimony regarding the existence of an alleged oral agreement setting |8forth a completion date of April 8, 2008, and liquidated damages of $500.00 per day, did not violate the parol evidence rule. Accordingly, the trial court found that Mr. Du-vio’s testimony created a genuine issue of material fact as to whether there was such an oral agreement between the parties.
At the close of Mr. Duvio’s case-in-chief, Specialty Pools moved for a directed verdict on the issue of liquidated damages. The trial court denied Specialty Pools’ motion for directed verdict, finding that there was corroborating evidence regarding the existence of an oral agreement sufficient to let the jury decide.
Parol Evidence Rule.
On appeal, Specialty Pools argues that Mr. Duvio is not entitled to liquidated damages because there was no written agreement between the parties providing for liquidated damages. Mr. Duvio argues that he and Specialty Pools had an oral agreement that the pool would be completed and delivered by April 20, 2008 and, if not, Specialty Pools would pay Mr. Duvio liquidated damages in the amount of $500.00 per day. Specialty Pools argues that Mr. Duvio’s testimony regarding an oral agreement with Specialty Pools to pay liquidated damages is parol evidence, which is inadmissible to vary the terms of the parties’ written agreement.
Testimonial or other evidence may not be admitted to negate or vary the contents of an act under private signature. La. Civ.Code art. 1848. Parol evidence, therefore, is not admissible to show a prior or contemporaneous agreement varying the terms of a written contract. Bernard v. Iberia Bank, 01-2234, p. 3 (La.App. 4 Cir. 10/30/02), 832 So.2d 355, 357 (citing La. Civ.Code art. 1848). Thus, the meaning and intent of the parties to a written agreement is | ^determined from within the four corners of the document, and its terms cannot be explained or contradicted by extrinsic evidence. Id.
It is equally established, however, that “testimonial evidence may be admitted to show that the written agreement *1008 was incomplete and was not intended by the parties to exhibit the entire agreement.” Safeguard Storage Props,, L.L.C. v. Donahue Favret Contractors, Inc., 10-0673, 10-0855, p. 22 (La.App. 4 Cir. 3/31/11), 60 So.3d 110, 124-25 (quoting Guilbeau v. C & D Reprographics—Lafayette, Inc., 568 So.2d 206, 211 (La.App. 3d Cir.1990)).
The trial court found that Mr. Duvio’s testimony regarding an oral agreement did not violate the parol evidence rule because the terms of the oral agreement did not alter the terms contained in the written agreement, despite the fact that the oral agreement allegedly added a liquidated damages provision that was not a part of the written agreement.
Mr. Duvio testified that the written agreement contained “some, but not all, of the terms” of their discussions. Mr, Duvio also testified that the “written proposal was never intended to reflect all of the terms of [their] agreement,” and that he would not have signed the written proposal until Specialty Pools agreed to the liquidated damages provision. Mr. Duvio’s testimony, therefore, was offered to show that the written contract “was not assented to as a complete integration.” Kirsch v. Pier Orleans, Inc., 362 So.2d 1182, 1185 (La. App. 4th Cir.1978). Thus, the evidence of an oral agreement on liquidated damages supplemented,' rather than contradicted, the terms of the written contract. Id. We find that in this case, parol evidence was properly admitted to prove such a “non-integrated side agreement.” Gammon Enters., Inc. v. Vanguard Inv., Inc., 449 So.2d 1077, 1077 (La.App. 4th Cir.1984).
^^Corroborating Evidence to Prove a Verbal Agreement In Excess of $500.00.
Specialty Pools also argues that Mr. Duvio did not satisfy the requirements of La. Civ.Code art. 1846, which provides that a verbal agreement for liquidated damages in excess of $500.00 must be proven by at least “one witness” and “other corroborating circumstances.” Specialty Pools argues that Mr. Duvio himself cannot be the source of the “corroborating circumstances” required in Article 1846. Specialty Pools also asserts that the only evidence offered at trial to prove Mr. Du-vio’s claim for liquidated damages was the testimony of Mr. Duvio himself and/or evidence created by Mr. Duvio’s own actions,
We agree that the requirement of other corroborating circumstances cannot come from the plaintiffs own actions, but must come from a source other than the plaintiff. Suire v. Lafayette City-Parish Consol. Govt., 04-1459, 04-1460, 04-1466, p. 29 (La.4/12/05), 907 So.2d 37, 58. The corroborating circumstances need only be general in nature; independent proof of every detail of the agreement is not required. Id. Mr. Duvio, as the party claiming to be owed in excess of $500.00, bears the burden of proving the existence of such a contract. Landix v. Blunt, 12-1231, p. 5 (La.App. 4 Cir. 3/20/13), 112 So.3d 376, 379.
Mr. Duvio’s wife, Cathy Duvio, who is not a plaintiff in this case, testified at trial:
Q, [W]ere you present in any of the discussions that related, to liquidated damages? ’
A. Yes ...
Q. Can you tell me what happened?
A. Yes. Before we signed it, before AJ [Mr. Duvio] signed the contract, we were—we wanted the pool done in three months. And I mean, AJ said, “I’ll give you fourth months.” And Merlin [De-Corte of Specialty Pools] said, “Oh, we’ll have it done in three months. It’s not going to be a problem. We’re gonna have it done.” In And AJ said, “If you go beyond four months there.will be *1009 $500 a day charge because of liquidated damages.” And Merlin said, “It will be done in three months.”
Q. Did he agree to the $500 a day charge?
A. Yes.
Also, an e-mail from Mrs. Duvio to Specialty Pools (Mr. DeCorte), refers to the existence of an oral agreement regarding the date of completion: “All balances will not be paid until pool is 100% and accepted the time that was promised in a verbal contract. 3 months plus 1 ½ month extension. We will hold your payment as long as you held us up on the pool. (The days are counting).”
The only evidence offered by Specialty Pools to counter Mrs. Duvio’s corroborating evidence is Mr. DeCorte’s trial testimony that the parties “never agreed to liquidated damages at any point throughout the contract process, nor would [he] agree to do that.”
Neither Mrs. Duvio nor Mr. De-Corte are disinterested witnesses whose testimony, if credible, would be given greater weight by the trial court than that of an interested witness. Winfield v. Porter, 618 So.2d 890, 893 (La.App. 4th Cir. 1993). But because the finder of fact is in the best position to determine the credibility of the witnesses, when two opposing witnesses testify contrarily to one another on corroborating circumstances, the fact-finder may properly believe one and disbelieve the other, and this finding of fact will not be disturbed on appeal. Viator v. Bishop, 488 So.2d 1228, 1230 (La.App. 4th Cir.1986). Accordingly, we do not find that the trial court was clearly wrong in denying Specialty Pools’ Motion for Partial Summary Judgment and Motion for Directed Verdict on the issue of liquidated damages.
LaSpecialty Pools’ Assignment of Error No, 3 and Scottsdale’s Assignment of Error No, 1: The Trial Court Erred in Denying Defendants’ Exceptions of Per-emption Under La. R.S. 9:2772 on the Issue of Differential Settlement.
When a peremptory exception involves the interpretation of a statute, it is a legal question that is reviewed de novo. Chapital v. Harry Kelleher & Co., 13-1606, p. 6 (La.App. 4 Cir. 6/4/14), 144 So.3d 75, 82. When, as here, evidence is introduced at the hearing on the peremptory exception of peremption, the trial court’s findings of fact are reviewed under the manifest error/clearly wrong standard of review. Lomont v. Bennett, 14-2483, p. 8 (La.6/30/15); 172 So.3d 620, 627, If those findings are reasonable in light of the record reviewed in its entirety, an appellate court cannot reverse even though it is convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Id.
On appeal, Scottsdale and Specialty Pools contend that Mr. Duvio’s claim for damages arising out of the differential settlement of the pool is time-barred under La. R.S. 9:2772 because it was not asserted prior to July 16,2013.
La. R.S. 9:2772 establishes a five-year peremptive period for actions against a contractor arising from the construction of an immovable. La. R.S. 9:2772(A)(l)(a) provides, in pertinent part:
[N]o action, whether ex contractu, ex delicto, or otherwise, including but not limited to an action ... to recover on a contract, or to recover damages, or otherwise arising out of an engagement of planning, construction, design, or building immovable or movable property .-.. shall be brought ... against any person performing ... the construction of immovable, or improvement to immovable property ... [m]ore than five years ... *1010 after the improvement has been thus occupied by the owner.
Mr. Duvio testified in his deposition that he used the swimming pool at a party in early July 2008, and that the work was completed in late July 2008. The Injury concluded that the pool was substantially complete on July 15, 2008. The five-year peremptive period, therefore, began to run in July 2008. On its face, Mr. Duvio’s Second Amended Petition filed in August 2014 was filed outside the five-year per-emptive period in La. R.S. 9:2772.
Mr. Duvio argues that the trial court was correct in finding that his Second Amended Petition was timely filed within the five-year peremptive period in La. R.S. 9:2772 because it related back to the March 2009 filing of his original Petition pursuant to La.Code Civ. P. art. 1153. Under Article 1153, when the action asserted in the amended petition arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of filing of the original pleading.
Naghi v. Brener and Scaglione v. Juneau: Application of Article 1153 “Relation Back” to Peremptive Periods.
Specialty Pools and Scottsdale argue that Mr. Duvio’s cause of action for differential settlement set forth in his Second Amended Petition is perempted and cannot relate back to the filing of his original Petition. Specialty Pools and Scottsdale rely on the Louisiana Supreme Court’s decision in Naghi v. Brener, 08-2527 (La.6/26/09), 17 So.3d 919. Naghi addressed the interaction of La.Code Civ. P. art. 1153 and the one-year peremptive period in the Louisiana attorney malpractice statute.
In Naghi, a petition was filed on behalf of individual parties who had no right to sue. After the trial court granted the defendants’ exception of no right of action, the court gave the plaintiffs ten days to amend their petition. The plaintiffs amended their petition to name the proper party plaintiff, but only after expiration of the one-year peremptive period for bringing legal malpractice actions. Id. at pp. 1-3, 17 So.3d at 919-20. The defendants filed an Exception of Peremption and Motion for Summary Judgment arguing that the amended petition was perempted. Id. at p. 2, 17 So.3d at 921. Both the trial court and this Court held that the plaintiffs’ amended petition related back to the original petition under La.Code Civ. P. art. 1153, and thus was not perempted. Id. at pp. 3-4, 17 So.3d at 920-21.
The Supreme Court in Naghi noted that “this Court has never directly addressed whether an amended petition adding a plaintiff related back to the original timely filed petition under Article 1153 when the time period for filing suit is peremptive rather than prescriptive.” Id. at p. 8, 17 So.3d at 924.
The Naghi Court initially discussed the Civil Code articles and jurisprudence governing peremptive periods. Under La. Civ.Code art. 3458, “[peremption is a period of time fixed by law for the existence of a right. Unless timely exercised, the right is extinguished upon the expiration of the peremptive period.” Under La. Civ.Code art. 3461, “[p]eremption may not be renounced, interrupted, or suspended.” Because the expiration of the peremptive period extinguishes or destroys the right, nothing may interfere with the running of a peremptive period. Borel v. Young, 07-0419, p. 8 (La.11/27/07), 989 So.2d 42, 49.
Applying these principles, the Naghi Court declared that “there can be no question but that ‘relation’ back of an untimely *1011 filed amended petition directly interferes with the application of prescription or per-emption by allowing a claim that would have otherwise prescribed or been per-empted to proceed.” Naghi, 08-2527 at p. 8, 17 So.3d at 924.
In Naghi, the individual plaintiffs had no right to sue because they did not own the damaged property. After the expiration of the one-year peremptive period, the plaintiffs amended their petition to name the proper party plaintiff, a | ^corporation. The plaintiffs argued that their amended petition related back to their original petition, and was not perempted. The Naghi Court stated that the relation-back theory assumes that there is a “legally viable claim” to which the pleading can relate back. Id. at p. 10, 17 So.3d at 925. According to the Court, because a cause of action no longer exists after the termination of the peremptive period, and any right to assert the claim is destroyed, there is nothing to which an amended pleading filed after the peremptive period has expired can relate back. Id. at pp. 10-11, 17 So.3d at 925-26. The Court concluded that because the original petition, filed within the peremptive period, was brought by a party with no right of action to sue, the amended petition filed after the peremptive period, and brought on behalf of the proper party plaintiff, cannot relate back to the original timely filed petition. Id. at p. 11, 17 So.3d at 926. The Naghi Court thus held that “relation back of a petition adding a new plaintiff is not permitted where the time period is peremp-tive.” Id. (emphasis added).[3]
Mr. Duvio argues that Naghi does not apply because that case involved the amendment of a petition to name the proper party plaintiff, and not an amended petition that demanded additional damages for differential settlement arising from the same construction project. According to Mr. Duvio, the Naghi Court’s holding was limited: An amended petition naming the proper party plaintiff after the expiration of the peremptive period for bringing a legal malpractice action cannot relate back to an original petition brought by a party with no right of action. Naghi, 08-2527, at p. 11, 17 So.3d at 926.
11frMr. Duvio cites the Louisiana Supreme Court’s decision in Scaglione v. Juneau, 10-1734 (La.7/27/10), 40 So.3d 127, in which the Court distinguished Naghi on its facts. The Scaglione decision addressed the peremptive period for filing a petition objecting to a circuit judge’s candidacy under La. R.S. 18:1401, et seq. The plaintiffs initially sued the Clerk of Court for St. Bernard Parish, as the official before whom the candidate had qualified, but did not sue the Secretary of State, as required by statute, within the peremptive period. Id. at p. 1, 40 So.3d at 128. The plaintiffs argued that they should be allowed to cure the defect by amending their petition to add the Secretary of State. The trial court found that the plaintiffs should not be allowed to cure the defect because the peremptive period for commencing an elections suit had already run, and could not be interrupted. This Court affirmed, Scaglione v. Juneau, 10-1048 (La.App. 4 Cir. 7/23/10), 41 So.3d 1287.
In reversing the trial court’s judgment granting the defendant’s exception of per-emption, the Supreme Court declared that *1012 the lower courts erred in relying on Naghi for their finding that “any and all additional pleadings were perempted.” Scaglione, 10-1734 at p. 2, 40 So.3d at 128. The Supreme Court reasoned that, unlike Na-ghi, where the plaintiff did not file suit in the name of the proper party plaintiff, in Scaglione, the plaintiffs “initially set forth a viable claim in their original petition,” and the “proposed addition or substitution of the Secretary of state [under La.Code Civ. P. arts. 641 and 927(A)] did not involve a different or new cause of action.” Id. The Court, therefore, held that the amended petition was not perempted. Id.
h-Although this case does not address the amendment of a petition to add or substitute a defendant, we are bound by the holding in Scaglione: If an amended petition filed after the expiration of a per-emptive period does not involve a different or new cause of action, the amended petition relates back to the original petition under La.Code Civ. P. art. 1153, and is timely filed.
Relation Back of the Amended Petition to The Original Petition
Under La.Code Civ. P. art. 1153, “[w]hen the action ... asserted in the amended petition ... arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of filing of the original pleading.”
Mr. Duvio’s Second Amended Petition specifically alleges that differential settlement of the uneven pilings beneath the pool caused or contributed to the cracking in and around the pool. Mr. Du-vio argues that the Second Amended Petition relates back to the original Petition because the original Petition gave fair notice of the facts out of which the amended petition arises, and because the Second Amended Petition’s “thrust” factually relates to the conduct, transaction or occurrence originally alleged.
The original Petition asserted liability for the defective construction of the swimming pool under several theories, including redhibition (breach of warranty that the pool was free from hidden defects and redhibitory vices); negligence (breach of duty to construct the pool in a proper and/or workmanlike manner); and breach of contract (breach of agreement to deliver the pool free from defects for a period of one year from date of acceptance).
|1RAn amended petition relates back to the original petition if the original pleading “[gave] fair notice of the general fact situation out of which the amended claim arises.” Gunter v. Planche, 439 So.2d 437, 440 (La.1983). “Article 1153 requires only that the amending petition’s thrust factually relates to the conduct, transaction or occurrence originally alleged.” Id.
The “general fact situation” out of which the original Petition arose was that the pool was improperly constructed and “riddled with defect[s].” Specifically, the original Petition asserted that, among other defects, the pavers near the deck drain system “were sinking into the ground,” the foundation under the pavers and under the Duvios’ residence and driveway was being “wash[ed] away,” and there was “cracking in the chain wall near the drain.”
Scottsdale argues that the Petition’s “list of specific acts of alleged negligence and breaches of contract,” along with a “catchall phrase for other acts of negligence identified through discovery and/or trial” did not put Scottsdale on notice that differential settlement was a factual basis for Mr. Duvio’s claims. We disagree. The allegations of sinking and cracking set forth in the original Petition gave fair no *1013 tice to Scottsdale of the general problems with the foundation of the pool. As noted by Mr. Duvio, Scottsdale must have had notice of foundation issues when it the asserted the “Earth or Land Movement Exdusion(s)” in the policy as an affirmative defense to the original and First Amended Petitions.
In sum, we find that the Second Amended Petition related back to the original Petition, so that Mr. Duvio’s claim for differential settlement is not time-barred.
| Scottsdale’s Assignment of Error No. 3: The Trial Court Erred in Refusing to Give Scottsdale’s Jury Instruction and Interrogatory Regarding the Earth Movement Exclusion.
The Scottsdale CGL policy contains an “Earth or Land Movement Exclusion”:
This policy does not apply to “bodily injury”/ “bodily injury,” “property damage”/“property damage,” “personal and advertising injury” or damages/“damages” caused, directly or indirectly or in whole or in part, by the movement, in any direction, of earth or land, regardless of:
1. The cause or source of such earth or land movement;
2. Whether such earth or land movement arises from natural or man-made forces or causes; or
3. Whether such earth or land movement occurs:
a. Independently of;
b. As a result of;
c. In concurrence or connection; or
d. In any sequence associated with any other natural or man-made forces, causes, events or operations.
Earth or land movement includes, but is not limited to, subsidence, settling, sinking, rising, slipping, falling away, caving in, shifting, expanding, contracting, dissolving, eroding, mudflow, sliding, tilting of land or earth, earthquakes, volcanic eruption and weather.
(Emphasis in original.)
The contested Jury Instruction stated:
One issue for you to decide in this case is whether the pilings under plaintiffs pool moved as a result of the movement of the earth beneath the pool, the movement of pilings through the earth beneath the pool, or whether both of these things occurred.
Contested Interrogatory No. 16 stated: To the extent you awarded damages for the Duvio pool related to the pilings under the pool, was the issue caused |gnby the movement of the earth beneath the pool or the movement of the pilings through the earth, or both?

Check one or both if they apply:

_ Movement of the Earth
_ Movement of the Pilings
(Emphasis added.)
According to the verdict form, two out of the twelve jurors found that the damage was caused by both the “Movement of the Earth” and the “Movement of the Pilings.” The other ten jurors found that the sole cause of the damage was “Movement of the Pilings.”
Scottsdale asserts the trial court erred in failing to instruct the jury to determine whether “the differential settlement was caused directly or indirectly, in whole or in part, by earth movement,” as stated in the policy exclusion. Scottsdale also contends that the jury interrogatory should not have asked the jury to determine whether the “movement of pilings” caused or contributed to the damage to Mr. Duvio’s pool because this inquiry is irrelevant.
Specialty Pools argues that the jury instruction and interrogatory set forth the correct principles of law, as they required *1014 the jury to determine whether “movement of the earth,” “movement of the pilings,” or “both” caused the damage to Mr. Du-vio’s pool. According to Specialty Pools, the instruction specifically contemplated that there might be more than one cause of the damage, and adequately conveyed the "exclusion’s terms. Specialty Pools contends that this instruction allowed the jury to determine what role, if any, earth movement played in causing the damage to Mr. Duvio’s pool, and that the jury’s finding could not be more clear—earth movement was not the cause, nor was it one of the causes of this damage.
[⅞1 “Louisiana jurisprudence is well established that an appellate court must exercise great restraint before it reverses a jury verdict because of erroneous jury instructions.” Adams v. Rhodia, 07-2110, p. 6 (La.5/21/08), 983 So.2d 798, 804. Trial courts have broad discretion in formulating jury instructions, and a charge is appropriate if it “correctly states the substance of the law.” Id.
However, when a jury is erroneously instructed and the error probably contributed to the verdict, an appellate court must set aside the verdict. Adams, 07-2110 at p. 7, 983 So.2d at 804. In assessing an alleged erroneous jury instruction, “it is the duty of the reviewing court to assess such impropriety in light of the entire jury charge to determine if the charges adequately provide the correct principles of law as applied to the issues framed in the pleadings and the evidence,” and “whether the charges adequately guided the jury in its deliberation.” Id.
Because the adequacy of jury instructions must be determined in the light of the jury instructions as a whole, when small portions of the instructions are isolated from the context and are erroneous, error is not necessarily prejudicial. Adams, 07-2110 at p. 7, 983 So.2d at 805. On appellate review of a jury trial, the mere discovery of an error in the judge’s instructions does not of itself justify the appellate court conducting the equivalent of a trial de novo, without first measuring the gravity or degree of error and considering the instructions as a whole and the circumstances of the case. Adams, 07-2110 at pp. 7-8, 983 So.2d at 805.
“ ‘If the trial court submits a verdict form to the jury with misleading or confusing interrogatories, just as when it omits to instruct the jury on any applicable essential legal principles, such interrogatories do not adequately set forth the issues to be decided by the jury and may constitute reversible error.’” Provosty v. ARC Constr., LLC, 12-1015, p. 12 (La. App. 4 Cir. 3/20/13), 119 So.3d 23, 32 (quoting Doyle v. Picadilly Cafeterias, 576 So.2d 1143, 1153 (La.App. 3d Cir.1991)).
Jury Interrogatory No. 16 clearly instructed the jury that it must consider whether the damage to the pool was caused by the “Movement of the Earth,” by the “Movement of the Pilings,” or by both. Thus, the jury was free to decide whether earth movement was the only cause, was part of the cause, or was not the cause at all. By finding that the movement of the pilings was the sole cause of the damage, the jury rejected the possibility that the damage was caused indirectly or partially by earth movement.
Scottsdale also argues that, because there is no dispute between the parties that the pilings moved, it was error for the jury to consider a question—the movement of the pilings—that is irrelevant to the issue being decided.
The jury was required to decide the cause, in fact, of the damage to the pool. The jury was instructed that it could find that the damage was caused by earth *1015 movement, which would be excluded by the policy. Mr. Duvio was entitled to ask the jury if something else—movement of the pilings—caused the damage. The movement of the pilings, even if undisputed, had to be considered by the jury in determining the cause of the damage to the pool.
Scottsdale also argues that Jury Interrogatory No. 16 was improper because it did not use the phrase “differential settlement,” instead of asking the confusing question whether the movement of the pilings was caused by (1) the movement of the earth beneath the pool; or (2) the movement of pilings through the earth beneath the pool.
| ⅛⅞A trial court is under no obligation to give any specific jury instruction that may be submitted by either party. Adams, 07-2110 at p. 6, 983 So.2d at 804.
We find that the jury instruction and interrogatory on causation properly reflected the applicable law and adequately conveyed the issues, even if they did not contain the language requested by Scottsdale or the precise language in Scottsdale’s policy. Accordingly, the trial court was not manifestly erroneous in giving the jury the instruction and interrogatory on causation.
Scottsdale’s Assignment of Error No. 4: The Jury’s Factual Findings That the Damage Was Caused By Pilings, and Not Earth Movement, Were Manifestly Erroneous.
Scottsdale assigns as error the jury’s finding that the movement of the earth was not the cause of the damage to Mr, Duvio’s pool. According to Scottsdale, there is “no evidence” to support the jury’s finding that earth movement was not a cause of the damage to Mr. Duvio’s pool.[4]
Because any exclusion from coverage in an insurance policy must be clear and unmistakable, the insurer bears the burden at trial of proving the exclusion applies. Davis v. Allstate Prop. & Cas. Ins. Co., 13-0244, p. 4 (La.App. 4 Cir. 11/27/13), 129 So.3d 811, 814. Insurance policies should be construed to effect, not deny, coverage. Yount v. Maisano, 627 So.2d 148, 151 (La.1993). Furthermore, causation is a factual finding that should not be disturbed unless the record does not furnish a basis for that finding, and it is clearly wrong or manifestly erroneous. Marshall v. Air Liquide-Big Three, Inc., 11-0990, p. 29 (La.App. 4 Cir. 9/7/12), 107 So.3d 13, 34.
124ScottsdaIe relies on the trial testimony of its expert engineer, Kevin Vanderbrook, who testified on the issue of causation as follows:
Q. Could you describe that process [re-consolidation of the soil] for the jury?
A. Sure. When you have soil and you impose a load on it, whether it be a house foundation or some sort of structure, the particles in the soil sort of readjust themselves to carry the load. And often, you’ll—you’ll have some compression of the soil layer when a load is added to it.
Q. As the soil moves in that compression process, that creates a down drag on the pilings, themselves. Is that right?
A. It can, yes.
*1016 Q. Is that your understanding that that happened here?
A. Yes.
Q. As I understand it correctly, those pilings moving is what caused this pool to fall. Is that correct?
A. Yes; the pilings and the soil surrounding the pilings.
Mr. Vanderbrook, however, also testified that if the pilings had been properly installed down to the sand strata, the pilings “would be impervious to the consolidation of the soils above.”
Mr. Duvio’s expert engineer, Ashton Avegno, also testified as to causation:
Q. If the pilings were properly installed in this case, whether the land was moving or not, would the pool be moving?
A. It should not be.
Q. So does the movement of the land below the pool have anything to do with causing this, as opposed to the pilings being improperly installed?
A. Well, if the piles were properly installed, then, the movement of the land wouldn’t cause or result in the movement of the pool.
Q. The movement of that earth wouldn’t have anything to do with this pool sinking, if those pilings stayed up; is that correct?
A. Most likely. If the pilings were deep enough in the sand strata, any movement, compression of the top soil, shouldn’t affect the pilings.
After hearing the testimony of these two experts, which the jury weighed in its role as fact-finder, the jury decided that “movement of the pilings” w^s the sole cause of the damage to Mr. Duvio’s swimming pool. At minimum, Mr. Avegno’s 12r,expert testimony supported the jury’s conclusion, and established that the pilings slipped through the earth because the pilings were placed in a location where the earth was not strong enough to hold them.
Where the testimony of experts differ, the trier of fact has great, even vast, discretion in determining the credibility of the evidence, and a finding of fact in this regard will not be overturned unless clearly wrong. Payton v. Progressive Sec. Ins. Co., 10-1644, p. 6 (La.App. 4 Cir. 5/25/11), 66 So.3d 1194, 1199. Thus, even if the testimony of both experts is considered credible, the trier of fact’s choice of Mr. Avegno’s testimony over that of Mr. Vanderbrook cannot be found to be manifestly erroneous or clearly wrong, and cannot bé disturbed on appeal. Brown v. Schwegmann, 05-0830, p. 7 (La.App. 4 Cir. 4/25/07), 958 So.2d 721, 725.
Scottsdale Assignment of Etror Nos. 5 and 6: The Trial Court Erred in Denying Scottsdale’s Motions for Directed Verdict and New Trial, and Granting Mr. Duvio’s Motion for Directed Verdict, on the Applicability of the Professional Liability Exclusion in the CGL Policy.
The Scottsdale CGL policy issued to Specialty Pools included an “Exclusion for Contractors-Professional Liability” which states, in pertinent part:
1. This insurance does not apply to ... property damage ... arising out of the rendering of or failure to render any professional services by you or on your behalf, but only with respect to either or both of the following operations:
a. Providing engineering, architectural or surveying services to others in your capacity as an engineer, architect or surveyor; and
b. Providing, or hiring independent professionals to provide, engineering, architectural or surveying ser *1017 vices in connection with construction of the work you perform.
2. Subject to Paragraph 3, below, professional services include:
126a. Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and speciftcations; and
b. Supervisory or inspection activities performed as part of any related architectural or engineering activities.
3. Professional services do not include services within construction means, methods, techniques, sequences and procedures employed by you in connection with your operations in your capacity as a construction contractor.
(Emphasis added.)
Scottsdale argues that the design of the pool’s foundation constituted engineering services, which are excluded from coverage. Scottsdale also argues that Specialty Pools’ failure to hire a qualified engineer to examine the soil characteristics and prepare the plans in accordance with those findings constitutes “failure to render” professional engineering services.
The professional liability exclusion applies to the rendering of “professional services,” but only if those professional services involve providing “engineering services”: (1) in the contractor’s “capacity as an engineer” and/or (2) “in connection with [the contractor’s] construction of the work that [it] perform[s].” The policy exclusion includes within the term “professional services” the preparation and approval of drawings and specifications.
In general, this court has found that the phrase “professional services” connotes the pursuit of a vocation or occupation requiring special, usually advanced, education, knowledge and skill. See Sommers v. State Farm Fire & Cas. Co., 99-2586, p. 7 (La.App. 4 Cir. 5/3/00), 764 So.2d 87, 91; see also Thermo Terratech v. GDC Enviro-Solutions, Inc., 265 F.3d 329, 335-36 (5th Cir.2001) (quoting Abramson v. Florida Gas Transmission Co., 908 F.Supp. 1389, 1394 (E.D.La.1995)) (“ ‘[professional services involve discretion acquired by ^special training and the exercise of special judgment’ ”). If an act does not require the exercise of particular skill or discretion acquired or developed by special training, can be done by an unskilled or untrained employee, and does not involve the exercise of any professional judgment, then it is not a professional service. Danks v. Maher, 177 So.2d 412, 417-18 (La.App. 4th Cir.1965).
Specialty Pools argues that the exclusion does not apply to professional services which it performed in its capacity as a construction contractor. Under the CGL policy, the exclusion does not apply to the act of providing “services within construction means, methods, techniques, sequences, and procedures employed by [Specialty Pools] in connection with [its] operations in [its] capacity as a construction contractor.”
At trial, Mr. DeCorte testified that he is not an engineer, and that Specialty Pools does not hold itself out as an engineer or represent that it performs engineering services. Mr. DeCorte also testified that Specialty Pools had previously designed and built several other pile-supported pools without acting as an engineer and without experiencing any problems. Mr. DeCorte further testified that Specialty Pools did not hire an engineer to design the pool because Specialty Pools “believed [it] had enough experience to know whether or not [it] needed an engineer,”
*1018 At trial, Scottsdale did not offer testimony from a pool design expert, and Scottsdale’s engineering expert testified that he had no experience or specialized training in the design of swimming pools.
Based on the testimony and evidence presented at trial, we find that Scottsdale failed to satisfy its burden of proving that Specialty Pools performed professional engineering services in designing Mr. Duvio’s pool.
^CONCLUSION
For the reasons assigned here, we affirm.
AFFIRMED

. Subsequent change orders increased the price to $209,427.57.

. The record shows that the alleged completion dates varied from April 8, 2008 to April 20, 2008.

. The dissent in Naghi stated that ‘‘the majority decision circumvent[ed] the reason we originally granted this writ, which was to determine whether the Louisiana Code of Civil Procedure Article 1153, which allows an amended petition to relate back to the time of filing of the original petition, applies to the one-year period set forth in the legal malpractice statute.” Naghi v. Brener, 08-2527, pp. 2-3 (La.08-2527), 17 So.3d 919, 927 (Kim-ball, C J„ dissenting).

. Scottsdale cites Nida v. State Farm Fire & Cas. Co., 454 So.2d 328 (La.App. 3d Cir. 1984), and Andreasen v. City of Houma, 537 So.2d 318 (La.App. 1st Cir.1988), to support its argument that the CGL policy exclusion for “earth movement” unambiguously applies to property damage caused by differential settlement. Neither Nida nor Andreasen addressed the specific issue presented here—• whether pilings were the cause of differential settlement.